Andreas ASSHAUER, et al., Appellants

v.

GLIMCHER REALTY TRUST, Glimcher Properties Corporation, Glimcher Properties Limited Parternship, and Glimcher Supermall Venture, L.L.C., Appellees.

No. 05–06–00853–CV.

Court of Appeals of Texas, Dallas.

July 12, 2007.

John E. Chapoton, Jr., Fabrega, Hood, Raynes & Fass, L.L.P., H. Ronald Welsh, Cunningham, Welsh, Darlow, Zook, & Chapoton, L.L.P., Houston, for Appellant.

William R.H. Merrill, Susman Godfrey, L.L.P., Houston, Scott Michael Garelick, Lackey Hershman, LLP, Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and FITZGERALD.

## OPINION

Opinion by Justice WRIGHT.

Appellants filed suit against appellees[1] over the transfer of property in Auburn, Washington. Appellees filed a special appearance. Following a hearing, the trial court granted appellees' special appearance, and this interlocutory appeal followed. In three issues, appellants assert the trial court abused its discretion by denying their objections to appellees' affidavits in support of their special appearance and in granting the special appearance. We affirm the trial court's order granting the special appearance.

### DENIAL OF OBJECTIONS TO AFFIDAVITS

In their first issue, appellants assert the trial court erred in denying their objections to appellees' affidavits filed in support of the special appearance. Appellants complain of three affidavits: the January 13, 2006 corrected affidavit of Patricia Powers (corrected affidavit); the April 17, 2006 affidavit of Patricia Powers; and the April 17, 2006 affidavit of George Schmidt. Appellants contend the corrected affidavit is not based on personal knowledge and that the other two affidavits were filed late without leave of court. Appellees respond that the trial court properly denied the objections and considered the affidavits.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex.2003); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

We conclude appellants' complaints regarding the Schmidt affidavit and the Powers second affidavit are without merit. The record reflects that the hearing on the special appearance was conducted on March 31, 2006. Two days before the hearing, on March 29, 2006, appellants filed a response to the special appearance that consisted of approximately 432 pages. On March 30, 2006, Appellants filed a "summary" of its response. At the March 31, 2006 hearing, appellees sought, and the trial court granted, permission to file a reply to appellants' response. Therefore, we conclude appellees had leave of court to file the reply, which included the second Powers affidavit and the Schmidt affidavit. *See* TEX.R. CIV. P. 120a(3).

We likewise conclude appellants' complaint regarding the Powers corrected affidavit is without merit. For an affidavit to have probable value, the affiant must swear the facts presented in the affidavit are within her personal knowledge. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex.2004); *see also* TEX.R. CIV. P. 120a(3). An affiant's acknowledgment of the sources from which she gathered her knowledge does not violate the personal knowledge requirement. *See In re E.I DuPont*, 136 S.W.3d at 224.

Here, Powers's corrected affidavit states she has personal knowledge of the facts and statements in the affidavit and that

---

1. Appellants named other defendants, but the others are not parties to this interlocutory appeal.

they are true and correct. She further states that the basis of her personal knowledge is from her review of her "clients' business records." She also states she reviewed documents executed as part of the transaction at issue in this case. We conclude the corrected affidavit is based on personal knowledge. *See id.*

Because the affidavits were properly before the Court and reflected they were based on personal knowledge, the trial court did not abuse its discretion in not striking the three affidavits. We resolve appellants' first issue against them.

PERSONAL JURISDICTION

In their second issue, appellants assert the trial court erred in failing to rule appellees had not met their burden to negate all possible grounds of jurisdiction pleaded by appellants. Appellants contend appellees failed to rebut the allegations and failed to contravene their own public representations and filings that show appellees regularly do business in Texas. In their third issue, appellants contend the trial court erred in granting appellees' special appearance because the great weight of the evidence showed appellees had submitted themselves to general jurisdiction in Texas for many years.

## A. Standard of Review and Applicable Law

■ Whether a trial court has personal jurisdiction over a non-resident defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). However, the trial court must frequently resolve fact questions before deciding the jurisdictional question. *Id.*

■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.* at 793. A defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *Id.*

■ Where, as here, the trial court issues findings of fact and conclusions of law in ruling on the special appearance, the appellant may challenge the legal and factual sufficiency of the evidence to support the findings and appellate courts may review the legal and factual sufficiency of the evidence to support the findings. *See id.* at 794.

A legal sufficiency challenge to the findings of fact fails if there is more than a scintilla of evidence to support the findings. *See id.* at 795. In conducting a factual sufficiency review, appellate courts may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Hoffmann v. Dandurand,* 180 S.W.3d 340, 345 (Tex.App.-Dallas 2005, no pet.).

We review the trial court's legal conclusions de novo. *BMC Software,* 83 S.W.3d at 794. Specifically, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id.* If the appellate court determines a conclusion of law is erroneous but the trial court rendered the proper judgment, the erroneous conclusion of law will not require reversal. *See id.*

■ The Texas long-arm statute authorizes the exercise of Texas jurisdiction over non-resident defendants. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 1997 & Supp.2006). The long-arm statute permits Texas courts to exercise jurisdiction over non-resident defendants that do business in Texas. *See BMC Software,* 83 S.W.3d at 795. The statute sets out a list of activities that constitute doing business in Texas. *See id.; see* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. Section 17.042 provides that

among other acts, a non-resident defendant does business in Texas if the non-resident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in the state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(1)-(3).

The list in section 17.042 is not exhaustive. The Texas Supreme Court has held that the broad language of section 17.042 extends the jurisdiction of Texas courts " 'as far as the federal constitutional requirements of due process will permit.' " *BMC Software*, 83 S.W.3d at 795 (quoting *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977)).

 In addition to the long-arm statute, the exercise of personal jurisdiction over a non-resident defendant must satisfy federal due process requirements. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of CA, Solano County*, 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 319, 66 S.Ct. 154).

 Due process is satisfied, enabling Texas courts to exercise personal jurisdiction over non-resident defendants, only if the defendants have minimum contacts with the state and the exercise of the jurisdiction will not offend traditional notions of fair play and substantial justice. *See BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154). There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction.

 Specific jurisdiction exists if the defendant has purposefully directed his activities at residents of the forum and the litigation arises from alleged injuries that arise out of or relate to those activities. *See Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In determining whether there is specific jurisdiction, the focus is on the relationship among the defendant, the forum, and the litigation. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868.

 General jurisdiction exists when the claims do not arise out of and are not related to the activities in the forum state, but the non-resident defendant has continuous and systematic contacts with the forum state. *See Helicopteros*, 466 U.S. at 416–17, 104 S.Ct. 1868. In determining whether there is general jurisdiction, the minimum contacts analysis becomes more demanding—the contacts must be substantial. *See BMC Software*, 83 S.W.3d at 797.

 The constitutional touchstone of personal jurisdiction is whether the defendant purposefully established minimum contacts with the forum state. *See Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.2005). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus

invoking the benefits and protections of its laws." *Michiana,* 168 S.W.3d at 784 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). A defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174.

There are three aspects to purposeful availment that are relevant to our review. *See Michiana,* 168 S.W.3d at 785. First, we consider *only* the defendant's contacts with the forum. *Id.* Purposeful availment ensures a defendant will not be haled into a jurisdiction solely as the result of the unilateral activity of another party or a third person. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 785.

Second, the acts upon which jurisdiction is based must be purposeful rather than random, fortuitous, or attenuated. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 785. A defendant who has deliberately engaged in significant activities within a forum state or created continuing obligations between himself and the residents has manifestly availed himself of the privilege of conducting business in the state. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *see also Michiana,* 168 S.W.3d at 785. On the other hand, a defendant will not be haled into a jurisdiction solely based on contacts that are random, isolated, or fortuitous. *Michiana,* 168 S.W.3d at 785 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

Third, a defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.; see also Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174 (because defendant's activities directed toward forum are shielded by benefits and protections of forum's law, it is pre-sumptively not unreasonable to require defendant to submit to burden of litigation in forum). By contrast, however, a defendant may purposefully avoid a particular jurisdiction by structuring its transactions so as to neither profit from the forum's laws nor be subject to its jurisdiction. *Michiana,* 168 S.W.3d at 785.

In addition to minimum contacts, the exercise of personal jurisdiction must satisfy traditional notions of fair play and substantial justice. *Asahi Metal,* 480 U.S. at 113, 107 S.Ct. 1026; *BMC Software,* 83 S.W.3d at 795. Determining this issue involves the evaluation of several factors, including: (1) the burden on the non-resident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in further substantive social policies. *Asahi Metal,* 480 U.S. at 113, 107 S.Ct. 1026; *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). However, when a non-resident has purposefully established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction over that defendant does not comport with traditional notions of fair play and substantial justice. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991).

## B. Background and Special Appearance Evidence

Appellants consist of approximately 230 plaintiffs, one of which is a United States citizen, one is a citizen of Switzerland, and the remaining are citizens of Germany. None of the appellants are residents of Texas. Appellants invested, either individ-

ually or jointly, in one or more of four limited partnerships: Washington Supermall Investors, L.P., Washington Supermall Associates, L.P., Washington Supermall Co–Owners, L.P., and Washington Supermall Partners, L.P. The purpose of the limited partnerships was to invest in the construction and ownership of Washington Supermall in Seattle, Washington. To accomplish this, the four limited partnerships invested in a fifth partnership, Washington Supermall Interests, L.P. (WSM Interests), a Delaware partnership with offices in Beverly Hills, California.

Glimcher Realty Trust (GRT) is a Maryland real estate investment trust. GRT's principle place of business in Columbus, Ohio.

Glimcher Properties Corporation (Glimcher Properties) is a Delaware corporation with its principle place of business in Columbus, Ohio. Glimcher Properties is a wholly owned subsidiary of GRT.

Glimcher Properties Limited Partnership (GPLP) is a Delaware limited partnership with its principle place of business in Columbus, Ohio. Glimcher Properties owns a .53–percent interest in GPLP and the remaining 99.47–percent is owned by limited partners. GRT is one of those limited partners, and has a 91.6 percent interest. The remaining limited partners are not subsidiaries of GRT.[2] GPLP is the operating partnership of GRT.

Glimcher SuperMall Venture, LLC (Glimcher SuperMall) is a Delaware limited liability corporation with its principle place of business in Columbus, Ohio. One percent of Glimcher SuperMall is owned by Glimcher Auburn. The remaining 99–percent is owned by GPLP. Glimcher SuperMall's profits and losses are consolidated in GRT's financial report based on GRT's percentage of indirect ownership.[3]

Several years after appellants invested in the Washington Supermall project, GPLP, WSM Interests, and a third-party entered into a contribution agreement to form a new limited liability company, Glimcher SuperMall Venture, L.L.C. Glimcher SuperMall was to develop and operate the shopping mall in Seattle. WSM Interests issued a promissory note for its consideration in the contribution agreement, which was secured by its ownership interest in Glimcher SuperMall. In 1998, when WSM Interests ceased paying on the note, GPLP foreclosed on WSM Interests's membership interest in Glimcher SuperMall. GPLP had previously purchased all of the third party investor's interest in the note.

Appellees' special appearance evidence consists of the affidavits of Patricia Powers, senior counsel for appellees, and George Schmidt, general counsel for appellees, as well as other documents.

Schmidt's affidavit states that none of the appellees were present in Texas for any negotiations related to the Washington Supermall and that all of the negotiations took place in Los Angeles, California, and Columbus, Ohio. Schmidt's affidavit also states that the closing of the transaction occurred in New York, New York.

Powers's December 21, 2005 corrected affidavit states that Glimcher Properties paid franchise taxes in Texas. The affidavit also states that appellees do not have any employees or bank accounts in Texas, and that they have not solicited any business in Texas. Further, the affidavit states that appellees have not initiated any lawsuits in Texas.

**2.** These percentages were contained in appellees' March 24, 2006 stipulation for purposes of the special appearance.

**3.** These percentages were contained in appellees' March 24, 2006 stipulation for purposes of the special appearance.

With regard to the contribution agreement between GPLP and WSM Interests, Powers's affidavit states that the negotiations took place in California, Ohio, and New York. None of the negotiations took place in Texas.

A copy of the contribution agreement and promissory note was filed with Powers's January 11, 2006 affidavit. The documents reflect that the property involved is located in King County, Washington. The documents further state that GPLP is a Delaware limited partnership with an address in Columbus, Ohio and WSM Interests is a Delaware limited partnership with an address in Beverly Hills, California. The documents provide that the closing on the Washington property will take place in New York, New York, and the contract will be controlled by Ohio law, except regarding matters affecting title, which will be controlled by the law of the state in which the property is located. The promissory note provides that it will be interpreted by Ohio law, and that the borrower submits to the exclusive jurisdiction of state or federal courts in Franklin, Ohio. Finally, the promissory note requires that payments be made to GPLP at the Ohio office.

Appellants stipulated for purposes of the special appearance that: (1) only one of the appellants was a United States citizen at any relevant time; (2) none of the appellants resided in Texas at any relevant time; (3) none of the appellants personally took any actions while present in Texas related to the allegations; (4) none of the alleged fraudulent misrepresentations were made to any appellant while the appellant was present in Texas; (5) no appellant was present in Texas when the alleged notices and disclosures should have allegedly been made; (6) no notices and disclosures regarding the 1998 transaction should have been made directly to any appellant personally in Texas; (7) no appellant personally communicated with or personally transacted any business with any appellee in Texas; and (8) no appellant was physically present in Texas when any of the alleged injuries occurred.

San Mall, L.L.C., a Delaware limited liability corporation, is a wholly owned subsidiary of Glimcher Properties. San Mall, L.L.C.'s principle place of business is in Columbus, Ohio. San Mall, L.P. is a limited partnership in which San Mall, L.L.C. owns a .5–percent interest and GPLP owns a 99.5–percent interest. San Mall, L.P. owns two properties in Houston, Texas—Alameda Mall and Northwest Mall. GPLP and San Mall, L.L.C. entered into an agreement whereby GPLP manages the two Houston malls for San Mall L.L.C. San Mall's profits and losses are consolidated in GRT's financial report based on the percent of GRT's indirect ownership.[4]

Powers's December 21, 2005 corrected affidavit details the management agreement between GPLP and San Mall, L.L.C. San Mall, L.L.C. and GPLP negotiated the management agreement in Ohio and it is governed by Ohio law. The affidavit further states that GPLP's activities in Texas have been carried out solely as the agent of San Mall, L.L.C. All activities by GPLP on behalf of San Mall, L.L.C. are performed in Ohio, including rent collection, legal services, leasing services, construction services, accounting services, and payment of expenses. Additionally, all rent payments related to the mall are sent directly to a lockbox in Columbus, Ohio. The affidavit further states that no officers or corporate decision makers of appellees

---

4. These percentages were contained in appellees March 24, 2006 stipulation for purposes of the special appearance.

resided in Texas during the management agreement and no management decisions were made in Texas.

Powers's April 14, 2006 affidavit states that GRT is not the owner of the property located at 12200 Gulf Freeway, Houston, Texas. The affidavit further states that the true owner of the property is San Mall, as reflected by a true and correct copy of the special warranty deed. The warranty deed reflects that San Mall, L.L.C. conveyed the property located at 12200 Gulf Freeway, Houston, Texas to San Mall, L.P. Finally, the affidavit states that San Mall, L.P. is the owner of both the Alameda Mall and the Northwest Mall.

Appellants presented numerous documents in support of their claim of jurisdiction, including: (1) the homepage for *www. glimcher.com;* (2) GRT's corporate profile; (3) GRT's timeline showing its acquisition of Texas properties in 1997 and the Washington Supermall property in 1998; (4) GRT's property listing by property name and state, identifying both Alameda Mall and Northwest Mall as Glimcher properties; (5) the homepages for the Alameda and Northwest malls showing they are owned and managed by Glimcher; (6) Glimcher's property portfolio contained in its 1998 annual report identifying Dallas Plaza in Dallas, as well as the Alameda and Northwest malls as GRT's properties; (7) GRT's 2004 annual report; (8) GRT's 1997 and 1998 10–Ks; and (9) GRT's 10–Q for the first quarter of 1998.

Appellants also attached the deposition of Powers and documents from lawsuits in Texas, both in state court and in federal bankruptcy court. The state court documents reflect one or more of the appellees were named defendants in lawsuits. In one case, an appellee filed a third-party petition seeking to add two John Does; in another case an appellee made a cross-claim against another defendant; and in a third case, an agreed judgment was en-tered. In three bankruptcy proceedings, GPLP filed objections to various things related to the debtors' claims. Additionally, appellants presented evidence that GPLP and Glimcher Properties are registered to do business and have registered agents in Texas.

## C. Analysis

Appellants contend appellees failed to rebut the allegations and contravene their own public representations and filings that show appellees regularly do business in Texas. In their third issue, appellants contend the trial court erred in granting appellees' special appearance because the great weight of the evidence showed appellees had submitted themselves to general jurisdiction in Texas for many years.

### 1. Specific Jurisdiction

██ Appellants contend Texas has specific jurisdiction over appellees because the core and focus of the fraud occurred in Texas, with harm resulting to the four Washington Supermall limited partnerships. Appellees respond that none of appellants' accusations have anything to do with Texas; therefore, appellees cannot be subject to specific jurisdiction. We agree with appellees.

In determining whether there is specific jurisdiction, the focus is on the relationship among the defendant, the forum, and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868. In this case, appellants claims against appellees relate to the "alienation" of the Washington Supermall. The record shows that none of GPLP's transactions with WSM Interests in the formation of Glimcher SuperMall took place in Texas. Appellants stipulated they were not in Texas at the time of any of the alleged transactions, and appellees' evidence showed the negotiations between GPLP and WSM Interests were conducted

in California, Ohio, or New York. The payments on the promissory note were to be made to the Ohio office, the forum selection clause stated that lawsuits would be brought in state or federal court in Franklin County, Ohio, and the property involved is located in Washington state. The evidence before us does not show that any acts related to the claims asserted by appellants against appellees occurred in Texas.

Moreover, that a defendant might have foreseen or knows the brunt of the injury will be felt by a particular resident in a forum state is not enough to establish minimum contacts. *See Michiana*, 168 S.W.3d at 788–89. And, specific jurisdiction is not established simply by the fact that the defendant "directed" a tort towards Texas. *See id.* at 790–91. That type of analysis "shifts a court's focus from the 'relationship among the *defendant*, the forum, and the litigation' to the relationship among the '*plaintiff*, the forum ... and the litigation.'" *Id.* at 790. It also would allow a non-resident defendant to defeat jurisdiction by showing there was no tort. *See id.*

We conclude the evidence establishes that the litigation between appellants and appellees does not arise from alleged injuries that arise out of or relate to appellees' activities in Texas. *See Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174; *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 587 (Tex.2007). Therefore, the trial court did not err in concluding Texas does not have specific jurisdiction over appellees.

### 2. General Jurisdiction

Appellants also assert the trial court erred in finding there was no general jurisdiction over appellees. According to appellants, appellees did not negate all of the bases of jurisdiction alleged by appel-

lants, and that the great weight of the evidence showed appellees had submitted themselves to general jurisdiction in Texas for many years. They further contend the trial court's findings are against the great weight and preponderance of the evidence. Appellees respond that their extremely limited contacts with Texas are not sufficient to subject them to jurisdiction and the undisputed evidence expressly negates appellants' allegations in support of jurisdiction. We agree with appellees.

There was some conflicting evidence regarding appellee GRT's ownership of property in Texas. Appellants' evidence included a printout from the Harris County tax rolls that showed GRT to be the owner of property in Texas. Additionally, there was evidence that GRT paid taxes on property in Texas. However, there was also evidence that the San Mall, L.P. is the owner of the two Houston Malls. San Mall, L.P. is not a party to the lawsuit in this case. Ownership by a subsidiary cannot generally be imputed to the parent, *see Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir.2000), and appellants claims against appellees do not relate to GPLP's management agreement with San Mall, L.L.C. *See BMC Software*, 83 S.W.3d at 798.

There is evidence that GPLP paid franchise taxes in Texas and that both Glimcher Properties and GPLP have registered agents and are registered to do business in Texas. We agree with our sister court of appeals, however, that having a registered agent and being registered to do business in Texas only potentially subjects a foreign corporation to jurisdiction in the state. *See Conner v. ContiCarriers & Terminals Inc.*, 944 S.W.2d 405, 416 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (plurality op.).

Further, although GPLP is the agent for the two Houston malls, the evidence shows

the contract with San Mall, L.L.C. was negotiated in Ohio and that all of the business functions are to be performed in Ohio, including payment of rent. Moreover, there is evidence appellees do not have employees in Texas and made no management decisions in Texas. Thus, the record reflects GPLP structured the transactions so as to purposefully avoid jurisdiction in Texas. *See Michiana,* 168 S.W.3d at 785.

Appellants also rely on the fact that appellees sought affirmative relief in several lawsuits in Texas. The documents reflect that one or more of the appellees were named as defendants in lawsuits, and then sought to protect themselves from liability via a cross-claim or third-party claim in the context of those lawsuits. However, the record does not show any of the appellees initiated lawsuits in Texas. In the federal bankruptcy proceedings, GPLP filed objections; however, the evidence shows that GPLP was the agent for San Mall, L.P. and, therefore, any relief sought would be on behalf of San Mall, L.P. not GPLP, individually. And, appellants claims against appellees do not arise from the GPLP's management of the two Houston malls. *See BMC Software,* 83 S.W.3d at 798. We conclude, therefore, this evidence does not show that appellees purposefully availed themselves of the privilege and protections of doing business in Texas.

Appellants also assert appellees are a single business enterprise, and thus subject to jurisdiction in Texas. The factors to consider in determining whether separate corporations should be treated as one enterprise include: (1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) common business name; (6) services rendered by employees of one corporation on behalf of another corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations. *Hoffmann,* 180 S.W.3d at 348 (citing *Paramount Petroleum Corp. v. Taylor Rental Ctr.,* 712 S.W.2d 534, 536 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.)). As with the alter ego theory, the purpose of the single business enterprise theory is to pierce the corporate shield to prevent an inequitable result. *See Carlson Mfg., Inc. v. Smith,* 179 S.W.3d 688, 694 (Tex.App.-Beaumont 2005, no pet.).

The only Glimcher "entity" that owns property in Texas is San Mall, L.P. San Mall, L.P.'s profits and losses are reported by GRT based on the percent of GRT's indirect ownership. Although there was evidence regarding some of the factors for finding a single business entity, there was no evidence of undocumented transfers of funds between corporations or an unclear allocation of profits and losses. The financial documents clearly established how GRT's interest in the various other companies was reported. There is no evidence appellees did not honor the corporate distinctness of the companies. *See BMC Software,* 83 S.W.3d at 799. And, in this case, it is not necessary to pierce the corporate shield to prevent an inequitable result. The only result of not having appellees part of the litigation in Texas is that appellants will have to file suit against appellees in a court where jurisdiction exists.

We conclude appellees negated all bases of jurisdiction and the trial court's findings of fact are not against the great weight and preponderance of the evidence. We further conclude the evidence shows appellees did not purposefully avail themselves of the privilege of conducting activities within the forum, "thus invoking the benefits and protections of its laws." *Michiana,* 168 S.W.3d at 784; *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801,

809–10 (Tex.2002). We resolve appellants' second and third issues against them.

### Conclusion

Having reviewed the record as a whole, we conclude the trial court did not abuse its discretion in denying appellants' objections to the appellees' affidavits in support of their special appearance. We further conclude appellees negated all of the bases of jurisdiction and the trial court's findings are not against the great weight and preponderance of the evidence.

We affirm the trial court's order granting appellees' special appearance.