

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00128-CV

_____

AIMEE T. GOINS, Appellant

V.

DISCOVER BANK, Appellee

---

On Appeal from County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2019-04030

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION ON REHEARING

Appellant Aimee T. Goins filed a motion for rehearing of our original opinion that issued on February 25, 2021. We deny the motion, withdraw our opinion and judgment dated February 25, 2021, and substitute the following.

## I. INTRODUCTION

Appellant Aimee T. Goins raises two issues complaining of the trial court's granting of Appellee Discover Bank's traditional motion for summary judgment. First, Goins argues that Discover Bank's summary judgment evidence was insufficient to support the trial court's judgment. Second, Goins argues that the trial court abused its discretion by overruling her objections to Discover Bank's summary judgment evidence. We affirm.

## II. BACKGROUND

Discover Bank's underlying action in this case was for breach of contract arising from an alleged unpaid balance due on Goins's Discover Bank credit-card account. After Goins filed her "original answer and general denial," Discover Bank filed its motion for traditional summary judgment and attached a business-records affidavit by its litigation-support coordinator, Abigail Hewett.[1] Attached to Hewett's affidavit were three exhibits:

1. A "Cardmember Agreement";

---

[1]The content of Hewett's affidavit is described in detail below.

2

2. A billing statement ending on March 25, 2019; and

3. A Servicemembers Civil Relief Act (SCRA) Status Report.

In her response to Discover Bank's motion, Goins did not attach any controverting affidavits or evidence, but she did argue that Discover Bank's evidence was insufficient to support its motion. Specifically, Goins argued that Discover Bank had not proved the formation of a contract between her and the bank and that, even assuming there was a contract, Discover Bank had provided insufficient evidence to show a breach. Additionally, Goins argued that Hewett's affidavit was inadmissible hearsay and did not meet self-authentication requirements and that the Cardmember Agreement and the Status Report were irrelevant.

On February 19, 2020, the trial court granted Discover Bank's motion. The court found that there was "no genuine issue of material fact" and that Discover Bank was "entitled to judgment as a matter of law." The trial court's judgment awarded Discover Bank $20,160.88[2] in damages, $332.90 in court costs, and 5.00% postjudgment per annum interest. This appeal followed.

## III. DISCUSSION

### A. Admission of Evidence

Because Goins's second issue addresses her objections to Discover Bank's summary judgment evidence, we will address it first. Goins argues that the trial court

---

[2]The billing statement introduced by Discover Bank shows an outstanding balance of $20,160.88.

3

abused its discretion by overruling her objections to Hewett's business-records affidavit and accompanying documents.[3] Discover Bank counters that Hewett's affidavit testimony is adequately based on personal knowledge and sufficient to authenticate each of the documents attached to the affidavit. We agree with Discover Bank.

### 1. Standard of Review on the Admissibility of Evidence

We review the trial court's admission or exclusion of evidence for an abuse of discretion. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001). This

---

[3]While not raised by either party, it is arguable that Goins has failed to preserve this issue for our review. Even though the trial court's order granting Discover Bank's motion states that the trial court considered "the pleadings, the other summary judgment evidence, and the arguments of the parties," the order does not mention a ruling regarding Goins's objections, and we generally may not imply such a ruling from the granting of summary judgment. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018). The only indication that the trial court ruled on the objections is found on the trial court's docket sheet, which states, "P's MSJ by sub - d filed response (no contra aff) w/ obj - denied obj's - granted MSJ." A docket-sheet entry, however, ordinarily forms no part of the record that may be considered on appeal; rather, it is a memorandum made for the trial court and clerk's convenience. *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311, 315 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). Docket-sheet entries are inherently unreliable because they lack the formality of orders and judgments. *Id.* Because of this unreliability, a docket-sheet entry is generally considered insufficient to constitute a judgment or decree of the court. *Id.* Moreover, where the record does not reflect that the trial court ruled or refused to rule on objections to summary judgment evidence, we may not infer a ruling based solely on the trial court's summary judgment decision. *See Seim*, 551 S.W.3d at 166. By failing to obtain a ruling on her objections to the summary judgment evidence, Goins potentially waived the objections for appellate review. *See* Tex. R. App. P. 33.1(a); *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 317–18 (Tex. App.—San Antonio 2000, no pet.). We will assume without deciding that Goins has preserved her evidentiary complaints for our review, and we will address her second issue.

4

standard applies whether the evidence is summary judgment evidence or evidence introduced at trial. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles—that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

## 2. Summary Judgment Business-Record Affidavits

In order to be competent summary judgment evidence, an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex. R. Civ. P. 166(f); *Kerlin v. Airas*, 274 S.W.3d 666, 668 (Tex. 2008); *see Rodriguez v. Citibank, N.A.*, No. 04-12-00777-CV, 2013 WL 4682194, at *2 (Tex. App.—San Antonio Aug. 30, 2013, no pet.) (mem. op.) ("[T]he requirement of personal knowledge is satisfied when an affiant identifies the position he holds and describes his job responsibilities so that one can reasonably assume he would be particularly situated to have personal knowledge of the facts within his affidavit."). The rules of evidence do not require that the predicate witness for the admission of business records be their creator or have personal knowledge of the contents of the

5

records; the witness is required only to have personal knowledge of how the records are kept. *See* Tex. R. Evid. 803(6), 902(10); *In re E.A.K.*, 192 S.W.3d 133, 142 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 359 (Tex. App.—Dallas 2007, pet. denied) (holding affiant's testimony that she was foreclosure specialist and custodian of records for mortgagee with respect to mortgagor's loan was sufficient to satisfy personal-knowledge requirement of Rule 166a(f)). And a person's position or job responsibilities can peculiarly qualify her to have personal knowledge of facts and establish how she learned of the facts. *Boswell v. Farm & Home Sav. Ass'n*, 894 S.W.2d 761, 768 (Tex. App.—Fort Worth 1994, writ denied).

### 3. Goins's Challenges

Goins's argument in this issue has multiple subparts, and we will address them in turn. In order to do so, the language of Hewett's affidavit is relevant. In pertinent part, Hewett's affidavit states:

> I am a Litigation Support Specialist for DISCOVER PRODUCTS, INC. . . . . DISCOVER PRODUCTS, INC. is responsible for, among other things, maintaining account records pertaining to Discover Card accounts and interacting with Discover Card account holders with regard to payment owed on these accounts.
>
> This affidavit is made on the basis of my personal knowledge and in support of the Plaintiff's suit on account against the Cardmember(s).
>
> In my capacity as Litigation Support Coordinator, I have knowledge regarding, and access to, records regarding the Discover Card Account of the above referenced Cardmember(s). DISCOVER PRODUCTS INC. maintains these records in the ordinary course of its business, and

6

the records are updated with information on events (such as charges and payments on the account) by individuals with personal knowledge of those events or by automated processes that track such events at or near the time that the events occur. The same systems that record this information also generate periodic statements that are sent to Discover Cardmember(s), and store copies of these periodic statements. In addition, these same record-keeping systems contain information about which version of Discover Bank's terms and conditions has been communicated to an account holder and accepted by an account holder through the use of his or her Discover Card after receipt of the terms and conditions. I have personally inspected the records pertaining to the account of the Cardmember(s), including the last periodic statement sent to the Cardmember(s) by DISCOVER PRODUCTS INC., to ascertain the applicable terms and conditions, the balance due on said account and whether the Cardmember(s) have made payments on that balance.

According to the records maintained by DISCOVER PRODUCTS INC., during the period of time that account statements were generated, such statements were either provided to the Cardmember(s) electronically or mailed to the Cardmember(s) at the address maintained on file during that time period. According to the records maintained by DISCOVER PRODUCTS INC., the last known address associated with the Cardmember(s) is/are:

. . . .

The account is in default because the Cardmember(s) have not paid the amounts due and owing to Discover Bank on the account.

The business records maintained by DISCOVER PRODUCTS INC. and described above show that the Cardmember(s)' account with Discover Bank is governed by terms and conditions referred to as "terms level 26K." A true and correct copy of these terms and conditions have been provided to DISCOVER PRODUCTS INC.'s counsel in this case and is attached hereto as Exhibit A.

Exhibit B is a true and accurate copy of the last periodic statement sent by DISCOVER PRODUCTS INC. to the Cardmember(s), retrieved from the record-keeping system described above, and shows the amount that is now due and owing Discover Bank on the Account.

7

### a. Alleged Extraneous Statements

In part of her second issue, Goins argues that Hewett's affidavit and accompanying records contain "extraneous statements which exceeded the simple authentication requirements of a business records affidavit and must be excluded." Specifically, Goins takes exception to two statements in Hewett's affidavit: (1) that "the account is in default because the Cardmember(s) have not paid the amounts due and owing to Discover Bank on the account," and (2) that "the business records maintained by DISCOVER PRODUCTS INC. and described above show that the Cardmember(s)' account with Discover Bank is governed by terms and conditions referred to as 'terms level 26k.'"[4] Goins argues that these statements are not truly based on Hewett's personal knowledge because they are based on her review of Discover Bank's own records, which Goins argues are "out of court statements and documents." We disagree.

Under the business-records exception to the hearsay rule, the proponent of records must show (1) the records were made and kept in the course of a regularly conducted business activity, (2) it was the regular practice of the business activity to make the records, (3) the records were made at or near the time of the event that they

_____

[4]Hewett's affidavit states that Goins's account is governed by the terms and conditions referred to as "terms level 26k." She also said that the Cardmember Agreement attached to her affidavit was a true and correct copy of these terms and conditions. The Cardmember Agreement also displays the title "CM.TL26K.LIN.0218" in the upper right-hand corner of the document.

record, and (4) the records were made by a person with knowledge who was acting in the regular course of business. *See* Tex. R. Evid. 803(6); *E.A.K.*, 192 S.W.3d at 141. Furthermore, an affiant's acknowledgement of the sources from which she gathered her knowledge does not violate the personal-knowledge requirement. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004) (rejecting the contention that an affidavit was not based on personal knowledge when affiant stated his determinations were based on his review of the company's human-resources database for the legal department); *Asshauer v. Glimcher Realty Tr.*, 228 S.W.3d 922, 926 (Tex. App.—Dallas 2007, no pet.) (concluding affiant did not lack personal knowledge based on her review of her clients' business records and documents executed as part of transaction at issue).

Here, Hewett averred that in her capacity as Discover Bank's litigation-support coordinator, she possessed "knowledge regarding, and access to, records" regarding Goins's account. She also stated that Discover Bank maintained these account records in the ordinary course of business, that it was the practice of Discover Bank to make and maintain the records, that they were updated with information based on events "at or near the time the events occur[ed]," that the records were made and updated by individuals with personal knowledge of the events recorded in the records, and that she had personally inspected the records pertaining to Goins's account. Thus, the personal-knowledge requirement of the statements that Goins complains of was satisfied, and the statements were proper inclusions in Hewett's affidavit. *See*

9

*Kaldis v. U.S. Bank Nat'l Ass'n*, No. 14-11-00607-CV, 2012 WL 3229135, at *3 (Tex. App.—Houston [14th Dist.] Aug. 9, 2012, pet. dism'd w.o.j.) (mem. op.) (concluding that statements in business-records affidavit that were obtained from sources created by other individuals did not violate personal-knowledge requirement of a business-records affidavit).

Citing *Ortega v. Cach, LLC*, 396 S.W.3d 622 (Tex. App.—Houston [14th Dist.] 2013, no pet.), Goins asserts that when "a business records affidavit contains evidence beyond the simple authentication requirements of TEX. R. EVID[.] 902, the extraneous portions of the affidavit constitute inadmissible hearsay." Goins's reliance on *Ortega* is misplaced. In *Ortega*, the court held that three different affidavits were inadmissible. *Id.* at 630–31. The first affidavit the *Ortega* court held inadmissible was because it contained statements that were "neither created nor relied upon in the course of [the debt-collector's] regular debt-collection activities" and that had been created solely in anticipation of litigation. *Id.* at 631. The *Ortega* court rejected the second affidavit because it contained a date that made the affidavit either incorrect or referenced an account other than Ortega's. *Id.* And the *Ortega* court rejected the third affidavit because it was clear that the records discussed were made a year after the events they recorded and thus could not have been made "'at or near the time of the event' that it purports to record." *Id.*

In the case of Hewett's affidavit, nothing shows that Discover Bank did not create or rely upon the records she reviewed as the bases of her statements. Further,

the affidavit contains nothing indicating that it was addressing any account other than Goins's or that the records Hewett reviewed were not made at or near the time of the events the documents purport to record. To the contrary, Hewett referred to each of the account statements, and Goins did not offer any evidence to counter Hewett's sworn statements. We hold that the affidavit statements that Goins complains about were admissible; thus, we overrule this portion of Goins's second issue. *See Kaldis*, 2012 WL 3229135, at *3.

### b. The Relevance of the Cardmember Agreement

In the next part of Goins's second issue, she complains that the Cardmember Agreement attached to Hewett's affidavit is irrelevant and should not have been considered by the trial court. *See* Tex. R. Evid. 402. But Goins's complaint that the Cardmember Agreement is irrelevant is predicated on her position that Hewett's affidavit contained inadmissible out-of-court statements, a position we have already rejected. We overrule this portion of Goins's second issue.

### c. The Prejudicial Effect of the Cardmember Agreement

In the final portion of her second issue, Goins argues that, even assuming the Cardmember Agreement is relevant, "the risk of confusion and unfair prejudice of presenting a finder of fact with specific account terms that may or may not hold any relevance to the Account substantially outweighs whatever minimal probative weight the document may hold." *See* Tex. R. Evid. 403. But like her relevance argument, Goins's position is predicated on her argument that Hewett's affidavit does not

establish personal knowledge of the Cardmember Agreement. Having already rejected this argument, we overrule this portion of her second issue.

We conclude that Goins's objections to Hewett's affidavit and its attachments were not well founded. Thus, we overrule Goins's second issue in its entirety.

## B. Propriety of Summary Judgment

In her first issue, Goins argues that Discover Bank did not conclusively establish its breach-of-contract claim. Specifically, Goins argues that there is no conclusive proof regarding the formation of a contract between her and Discover Bank, but that even if there is conclusive evidence of a contract, Discover Bank did not conclusively establish its damages. Discover Bank argues that Hewett's business-records affidavit, the Cardmember Agreement, and the monthly billing statement showing the balance due and owed on Goins's credit-card account are sufficient to conclusively establish its claim and support the trial court's summary judgment. We agree with Discover Bank.

### 1. Standard of Review for Summary Judgment

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve

12

any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of a claim and, thereby, establishes its right to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

## 2. Breach-of-Contract Law

A plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018); *see, e.g., Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

To prove the first element (the existence of a valid contract), the plaintiff generally must establish that (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *See, e.g., E–Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.). In a credit-card case, these elements are satisfied when there is an issuance of a credit card by one party and the

13

use of the credit card by the other party. *Jones v. Citibank (S.D.), N.A.*, 235 S.W.3d 333, 338 (Tex. App.—Fort Worth 2007, no pet.) (holding that a contract was formed under federal, Texas, and South Dakota law, even if the cardmember never signed the card agreement because cardmember obtained and used credit card).

### 3. Contract Formation

In part of her first issue, Goins argues that Discover Bank did not conclusively establish the existence of a contract between her and Discover Bank. We disagree.

Goins's first contention regarding this issue is that the Cardmember Agreement is insufficient to support that she and Discover Bank had a contract. Specifically, Goins claims that the Agreement contains no information identifying her, no account numbers, and "no specific details sufficient to determine that the specific Cardmember Agreement provided was actually related to the account in question." Goins goes on to claim that there is "no evidence of how or when the Cardmember Agreement was communicated to" her. But it is not the Cardmember Agreement alone that establishes that Goins and Discover Bank had a valid contract. What links the Cardmember Agreement to Goins are Hewett's sworn statements that the record-keeping systems, of which she had personal knowledge, contained information "about which version of Discover Bank's terms and conditions has been communicated to an account holder and accepted by an account holder through the use of . . . her Discover Card after receipt of the terms and conditions." Hewett also stated that she had personally inspected the records pertaining to Goins's account to determine the

14

"applicable terms and conditions" and that the records showed that Goins's account was "governed by terms and conditions referred to as 'terms level 26K.'" Hewett averred that the Cardmember Agreement attached to her affidavit was a "true and correct" copy of these terms and conditions. Moreover, the Cardmember Agreement states that an account holder accepts the agreement if the cardmember uses the account. And the billing statement attached to Hewett's affidavit shows that there has been interest charged on "purchases" made on Goins's account, indicating that she has used the account in the past. This is conclusive proof that Goins and Discover Bank had a contract regarding Goins's account. *See Jones*, 235 S.W.3d at 338 ("The issuance of a credit card constitutes a credit offer, and the use of the card constitutes acceptance of the offer.").

Further, despite Goins's claim to the contrary, there is evidence that the Cardmember Agreement was delivered or communicated to her. In her affidavit, Hewett stated that Discover Bank's record-keeping systems contained information about the Cardmember Agreement being communicated to and accepted by Goins. This, coupled with both Discover Bank's actions of offering the account and Goins's making purchases on the account, shows that the parties had a contract. *See Duran v. Citibank (S.D.), N.A.*, No. 01-06-00636-CV, 2008 WL 746532, at *4 (Tex. App.— Houston [1st Dist.] Mar. 20, 2008, no pet.) (mem. op.) ("[W]hen parties manifest an intent through their actions and words that a contract become effective, manual delivery is immaterial to contract validity.").

15

Goins also argues that because the billing statement shows that Goins had been a cardmember since 2003 and because the Cardmember Agreement bears a 2018 copyright stamp, the Cardmember Agreement could not apply to any account she might have opened in 2003. This argument fails as well. In addition to the statements that Hewett made in her affidavit about how she had personal knowledge that the Cardmember Agreement contained the applicable terms and conditions, the Agreement states that Discover Bank has the right to add or delete any term to the agreement. *See Hinojosa v. Citibank (S.D.), N.A.*, No. 05-07-00059-CV, 2008 WL 570601, at *4 (Tex. App.—Dallas Mar. 4, 2008, pet. denied) (mem. op.) ("As previously discussed, the 1999 agreement is not a different agreement, but rather the same agreement as it may be amended from time to time."). Even though a copyright stamp might not be considered a term of the agreement, the agreement does state that it can be modified. *See id.* And Goins has pointed to no authority for the proposition that a credit-card agreement may not be updated to reflect a legal copyright date, even if it is affixed to an agreement that previously held a different date or no copyright stamp at all. We overrule the portion of Goins's first issue where she argues that there is no evidence of a contract between Discover Bank and her. *See Taylor v. Discover Bank*, No. 03-17-00677-CV, 2018 WL 4016611, at *1 (Tex. App.—Austin Aug. 23, 2018, no pet.) (mem. op.).

## 4. Breach of Contract

Goins next argues that Discover Bank failed to conclusively prove that she had breached her contract with Discover Bank. Specifically, Goins argues that Discover Bank failed to demonstrate that she was in default on her account. Goins contends that because the billing statement provided as evidence shows that she was not charged a late fee in accordance with the Cardmember Agreement and because Discover Bank did not provide proof of a "charge off," Discover Bank failed to prove default.

Discover Bank, however, provided direct evidence that Goins was in default on her account. The Cardmember Agreement specifically states that a cardmember is in default if any number of conditions are met, one of which is if Discover Bank has "a reasonable belief that [the cardmember is] unable or unwilling to repay [the cardmember's] obligation" to Discover Bank. The Cardmember Agreement also states that if the cardmember is in default, it "may declare the entire balance of [the] Account immediately due and payable without notice." The billing statement shows that Goins's account owed a previous balance of $19,915.13, that there had been no payments or credits made during the billing cycle, and that Goins was being charged interest on past purchases. *Monroe v. Unifund CCR Partners*, No. 01-09-00101-CV, 2010 WL 1948332, at *7 (Tex. App.—Houston [1st Dist.] May 13, 2010, no pet.) (mem. op.). Moreover, in her affidavit, Hewett averred that Goins's "account is in default because the Cardmember(s) have not paid the amounts due and owing to Discover

17

Bank on the account." *See id.* ("Similarly, Lutz's statement that a balance was owed on the account, plus the admission of a Citibank Agreement showing that the cardholder was obligated to pay as charged, was evidence supporting the trial court's [breach of contract] findings.") This evidence established that Goins breached her agreement with Discover Bank. *See Taylor*, 2018 WL 4016611, at *4.

Goins argues that the billing statement does not reflect that Discover Bank charged her any late fees in accordance with the Cardmember Agreement, thus, according to Goins, this is direct evidence that she was not in default. But the billing statement states that if Discover Bank did not receive Goins's minimum payment by the payment due date, Goins "may have to pay a late fee of up to $37.00." As the billing statement provides, Discover Bank had the ability to charge Goins for the lack of payment, but it was discretionary on the bank's part. Contrary to Goins's position, the lack of a charged late fee does not demonstrate that she was not in default, and the lack of evidence of a late charge does not overcome the direct evidence of default that Discover Bank provided. Moreover, Goins did not provide controverting evidence that might cast doubt on the veracity of the billing statement, such as an affidavit asserting that information in the statement was incorrect. *See id.* ("The Bank established as a matter of law that Taylor breached the contract by failing to pay the amount due on the credit card."). We overrule this portion of Goins's first issue.

## 5. Damages

In part of her first issue, Goins argues that Discover Bank failed to conclusively prove damages. We disagree.

An authenticated account statement submitted by a bank showing the balance owed proves the amount of damages in a claim for breach of contract. *See Ghia v. Am. Express Travel Related Servs.*, No. 14-06-00653-CV, 2007 WL 2990295, at *3 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, no pet.) (mem. op.). In *Ghia*, Ghia argued that American Express failed to establish the amount "owed and due." *Id.* The *Ghia* court reasoned that because American Express had provided the most recent account statement showing a balance of $21,781.75 (the amount of the judgment) and because American Express's custodian of records had authenticated the account statement, the bank had conclusively proved its damages. *Id.*

Similarly, in this case, Discover Bank attached to its summary judgment motion a billing statement associated with Goins's account showing an outstanding balance of $20,160.88 (the amount of the judgment in this case). Moreover, Hewett authenticated that the billing statement was a true and accurate copy of the last periodic statement sent by Discover Bank to Goins. This evidence conclusively proved Discover Bank's damages and supported the trial court's award of damages on summary judgment. *See id.*; *see also Matkin v. Am. Express Centurion Bank*, No. 05-17-01438-CV, 2018 WL 5816744, at *2 (Tex. App.—Dallas Nov. 7, 2018, no pet.) (mem. op.) ("The account statement submitted by the bank showing the balance owed was

19

sufficient evidence of the amount of the debt."). We overrule this portion of Goins's first issue.

### 6. The Applicable Annual Percentage Rate

Finally, citing *Tully v. Citibank (S.D.), N.A.*, 173 S.W.3d 212 (Tex. App.—Texarkana 2005, no pet.) and *Hay v. Citibank (S.D.) N.A.*, No. 14-04-01131-CV, 2006 WL 2620089 (Tex. App.—Houston [14th Dist.] Sept. 14, 2006, no pet.) (op. on reh'g), Goins argues in the remainder of her first issue that while Discover Bank did provide evidence of what interest rate was used by providing a billing statement that displays the rate, it "failed to provide evidence substantiating the appropriateness of using that interest rate." We conclude that this case is more akin to those cases where courts have declined to follow *Tully*, instead holding that because the annual percentage rate was listed on the respective billing statements, the contracts were not missing an essential term. *See Hinojosa*, 2008 WL 570601, at *3 ("Citibank included in its summary judgment evidence Hinojosa's billing statements, which include the applicable interest rate. Therefore, the contract is not missing an essential term.");[5] *see also Wynne v. Citibank (S.D.) N.A.*, No. 07-06-0162-CV, 2008 WL 1848286, at*3 (Tex. App.—Amarillo Apr. 25, 2008, pet. denied) (mem. op.) ("The court in *Hinojosa* rejected a similar argument, and we reject it here for the same reason."). Because Discover Bank provided summary judgment evidence that Goins would be charged

---

[5]The *Hinojosa* court also questioned whether the interest issue addressed in *Tully* was properly before the *Tully* court. *Hinojosa*, 2008 WL 570601, at *3 n.2.

an annual percentage rate pursuant to the Cardmember Agreement and because the billing statement lists the specific annual percentage rate applicable to Goins's account, we hold that Discover Bank established as a matter of law the applicable interest rate. *See Hinojosa*, 2008 WL 570601, at \*3. We overrule Goins's first issue in its entirety.

## IV. CONCLUSION

Having overruled both of Goins's issues on appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: March 25, 2021