**Reversed and Remanded and Majority and Dissenting Opinions filed January 29, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00768-CV

---

### RICHARD G. ORTEGA, Appellant,

### V.

### CACH, LLC, Appellee.

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County**
**Trial Court Cause No. 978366**

---

## MAJORITY OPINION

This appeal arises from a debt-collection action in which appellee CACH, LLC, sued appellant Richard G. Ortega seeking to recover against him as the alleged assignee of Ortega's credit-card debt. Following a bench trial, the trial court rendered judgment against Ortega. On appeal, he challenges the legal and factual sufficiency of the evidence as well as certain evidentiary rulings of the trial court. Concluding that the trial court erroneously admitted hearsay evidence and that this error probably resulted in an improper judgment, we reverse and remand.

# I

CACH sued Ortega for breach of contract based upon Ortega's failure to repay a debt under an agreement for consumer credit. According to the pleadings, MBNA—which later became Bank of America—originally issued a credit card in Ortega's name in 1998, and Ortega used or authorized use of the card, thereby incurring charges that he later failed and refused to pay. The credit card was cancelled when Ortega defaulted in making payments on the account. CACH alleges that it purchased the account with an outstanding balance of $13,741.73 and consequently brought suit as the alleged assignee of this debt.

Ortega answered the suit, asserting, among other defenses, that there had been no valid assignment of the account to CACH. In a counterclaim, Ortega asserted violations of the Texas Fair Debt Collection Practices Act.

During a bench trial in the court below, Ortega stated his name and acknowledged that he lived at 6423 Monahiti Place Northeast, Albuquerque, New Mexico 87107 ("Address"), between 1998 and 2009. Ortega testified that he had a couple of credit cards in 1998 but could not recall which ones they were or whether one was from MBNA. When asked whether he received a billing statement from MBNA at the Address, Ortega testified, "Just like I said, I don't remember if I had Bank of America." When asked whether he had been notified by MBNA that the company had become Bank of America, Ortega testified that he did not remember that either.[1] Nor did Ortega recall whether he received a credit card from Bank of America. Nevertheless, when presented with a Bank of America account statement bearing his name and the Address, Ortega conceded that he must have had a credit

---

[1] Ortega initially answered, "I remember that." But shortly thereafter he said, "I don't remember." The trial judge stated that she knew Ortega meant to say he did not remember but that he had actually said he did remember. The trial judge admonished Ortega to speak loudly and to be careful to say what he meant to say.

card from Bank of America and probably received that type of statement. Ortega also agreed that a billing statement, dated July 2009, from Bank of America reflected his name, correct mailing address, and a balance of $13,741.73. Ortega could not recall using the credit card, but testified that if he had, it would have been for family and household items and groceries. Ortega could not recall whether he submitted any written disputes to Bank of America relating to interest rates or fees associated with the use of the card.

CACH moved to admit into evidence a business-record affidavit signed by Magic West of CACH as Plaintiff's Exhibit 1. Twenty-one pages of records were attached to the affidavit, including the following:

(1) a second affidavit signed by Magic West ("West Affidavit");

(2) a document entitled "Affidavit of Claim and Certification of Debt" signed by Debra L. Pellicciaro of Bank of America, N.A. ("Pellicciaro Affidavit");

(3) a document entitled "Affidavit of Claim and Certification of Debt" signed by Elisabeth W. Plummer of Bank of America, N.A. ("Plummer Affidavit");

(4) a November 2008 billing statement from Bank of America reflecting a payment of $258 on 11/03, an unpaid balance of $12,602.72, the Address, and an account number of [XXXXXXXXXXXX4161];

(5) a September 2008 billing statement from Bank of America reflecting a payment of $268 on 8/30, an unpaid balance of $12,865.85, the Address, and an account number of [XXXXXXXXXXXX4161];

(6) a July 2009 billing statement from Bank of America reflecting an unpaid balance of $13,741.73, the Address, and an account number of [XXXXXXXXXXXX4161];

(7) a general statement of the provisions of a Bank of America, N.A. card-member agreement that is not signed by Ortega; and

(8) a general statement of the provisions of an MBNA America Bank,

3

N.A., credit-card agreement that is not signed by Ortega.

At trial, Ortega objected to the admission of the portions of the West, Pellicciaro, and Plummer Affidavits that related to the alleged sale and assignment of his account to CACH, arguing that those portions were hearsay and were also not the best evidence of CACH's ownership of the account. The trial court overruled Ortega's objections and admitted Plaintiff's Exhibit 1 in its entirety. Ortega challenges these evidentiary rulings in this appeal.

In the West Affidavit, West states that she is an authorized agent for and a custodian of records of CACH and states the following in pertinent part:

- As authorized agent and custodian of the business records for [CACH], I have personal knowledge based upon the review of the documentation provided by the original creditor (attached hereto) that, after all just and lawful offsets, payments, and credits have been allowed, the total balance on the account of $13,741.73 is just and true and is due and owing from [Ortega] to [CACH].

- Demand for payment of the just amount owing [CACH] by [Ortega] was made upon [Ortega] more than thirty (30) days prior to filing of [CACH's] original petition, and payment for the just amount owing has not been tendered.

In the Pellicciaro Affidavit, Pellicciaro states that she is employed as a bank officer by Bank of America, NA, and states "[t]hat as a result of the sale of said accounts, CACH and/or its authorized agent, has complete authority to settle, adjust, compromise and satisfy the account and that Bank of America has no further interest in this account for any purpose."

In the Plummer Affidavit, Plummer states that she is employed as a bank officer by Bank of America, NA, successor in interest to MBNA Bank, NA, and, in relevant part, states the following:

4

- That there is due and payable from RICHARD G. ORTEGA as of 8/18/2009 the sum of $13,741.73 withstanding [sic] legally chargeable post charge-off interest, pursuant to the terms of the card member agreement with Bank of America.

- That said agreement and account was, on 8/18/2009 sold, transferred and set over unto CACH, LLC, with full authority to do and perform all acts necessary for collection, settlement, adjustment, compromise or satisfaction of the said claim.

- That as a result of the sale of said account, CACH, LLC, and/or its authorized agent, has complete authority to settle, adjust, compromise and satisfy same that Bank of America had no further interest in this account for any purpose.

CACH's counsel testified regarding attorney's fees. The trial court ruled in favor of CACH and signed a final judgment ordering that CACH recover actual damages of $13,741.73 from Ortega as well as attorney's fees and court costs. This appeal followed.

On appeal, Ortega argues: (1) the trial court erred in overruling hearsay and best-evidence objections to the West, Pellicciaro, and Plummer Affidavits; (2) the trial court erred in rendering judgment for CACH because the record contains legally or factually insufficient evidence that the account was assigned to CACH; and (3) the trial court erred in rendering judgment for CACH because there is no evidence of how CACH calculated the finance charges and arrived at the debt balance that it requested and received from the trial court.[2] When an appellant asserts multiple grounds for reversal of the trial court's judgment, this court should first address all issues that would require rendition and then, if necessary, consider issues that would result in remand. *See* Tex. R. App. P. 44.3; *Natural Gas*

---

[2] In Ortega's fourth issue, he argues that the trial court erred in granting judgment for CACH because CACH failed to prove that it owned Ortega's account or how it calculated damages. Because this issue is redundant of Ortega's first three issues, we do not address it separately.

*Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201 (Tex. 2003). Because sustaining Ortega's second or third issue would result in rendition of judgment in his favor, we will consider those first.

II

In his second issue, Ortega argues that because the West Affidavit, the Pellicciaro Affidavit, and the Plummer Affidavit are all conclusory, there is no evidence that Bank of America sold Ortega's account to CACH. The dissent would resolve the case on this issue, reversing and rendering judgment for Ortega. We respectfully disagree, and overrule Ortega's second issue.

Ortega did not complain that the affidavits were conclusory at the trial court, but a litigant may raise a conclusory objection for the first time on appeal. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). The dissent believes that all three affidavits are conclusory. But the Plummer Affidavit states a fact, not a conclusion or an opinion.

In her affidavit, Plummer testified in part: "That said agreement and account was, on 8/18/2009 sold, transferred and set over unto CACH, LLC . . ." Plummer identified herself as an officer of Bank of America and stated "[t]hat the statements made in this Affidavit are based on the computerized and hard copy books and records of Bank of America." According to the dissent, the affidavit is conclusory because Plummer provides no factual basis to support this statement.

But a person may testify to a sale and assignment without providing any documentary evidence. *Prudential Ins. Co. of Am., Inc. v. Black*, 572 S.W.2d 379, 380 (Tex. Civ. App.—Houston [14th Dist.] 1978, no writ) (allowing a partner in a partnership to testify to sale and assignment of a lease without the underlying sale and assignment documents). Plummer could testify on her personal knowledge that the account was transferred to CACH without providing any supporting

6

documentation.[3] Her statement that the account was sold to CACH is not conclusory. We overrule Ortega's second issue.

## III

In his third issue, Ortega argues that the trial court erred in granting judgment for CACH because CACH presented no evidence proving how the finance charges were calculated and how CACH arrived at the debt balance requested by CACH and awarded by the trial court. In response, CACH argues that Ortega failed to preserve this error. We agree.

To preserve a complaint for appellate review, the appellant must present to the trial court a timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. Tex. R. App. P. 33.1(a). Although a complaint regarding the legal or factual insufficiency of the evidence may be made for the first time on appeal, an objection to insufficient foundation is one of form rather than substance and must be preserved. *See id.* 33.1(d); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

In Ortega's brief, he fails to elaborate on this point beyond restating the issue. In context, however, we understand his argument to be an objection to insufficient foundation. Because he failed to object to CACH's calculations of finance charges and of the debt balance to the trial court, he has not preserved the error. *See Hou-Tex, Inc.*, 26 S.W.3d at 112 (holding objections that an affidavit was speculative, without foundation, and lacked personal knowledge are all defects

---

[3] To the extent that Ortega complains that the Plummer Affidavit lacks foundation, his objection is waived. An objection to insufficient foundation is one of form, not substance, and thus Ortega was required to make that objection below. He did not. *See Hou-Tex, Inc. v Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

of form and must be raised in the trial court). Accordingly, we overrule this issue.

## IV

In his first issue, Ortega argues that the trial court erred by admitting the West, Pellicciaro, and Plummer Affidavits in their entirety over his hearsay and best-evidence objections. With regard to Ortega's hearsay argument, we agree.

Evidentiary rulings are committed to the trial court's sound discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). A trial court abuses its discretion only when it rules without regard for any guiding rules or principles, and we must uphold a trial court's evidentiary ruling if there is any legitimate basis to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Even if a court erroneously admitted improper evidence, the complaining party must show that the error probably resulted in an improper judgment, which typically requires a showing that the judgment turned on the particular evidence in question, to warrant reversal. Tex. R. App. P. 44.1; *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In making this determination, we review the entire record. *Interstate Northborough*, 66 S.W.3d at 220.

Ortega does not challenge the admissibility of the billing statements or credit-card agreements in Plaintiff's Exhibit 1, which were properly admitted under the business-records exception in rule 803(6). Nor does he contend that the business-record affidavit fails to properly authenticate those records under rule 902(10). His challenge is limited to the paragraphs in the West, Pellicciaro, and Plummer Affidavits regarding the sale and assignment of Ortega's account from Bank of America to CACH. In response, CACH insists that the affidavits were admissible in their entirety under the business-records hearsay exception.

8

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is inadmissible unless a statute or rule of exception applies. Tex. R. Evid. 801(d); 802. The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004); *Skillern & Sons v. Rosen*, 359 S.W.2d 298, 301 (Tex. 1962).

Under the business-records exception, evidence that is otherwise inadmissible as hearsay may be admissible if the proponent of the evidence demonstrates that (1) the records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to create such records; (3) the records were created at or near the time of the event recorded; and (4) the records were created by, or from information transmitted by, a person with knowledge who was acting in the regular course of business. Tex. R. Evid. 803(6); *see In re E.A.K.*, 192 S.W.3d 133, 141 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). These prerequisites to admissibility may be provided in the form of an affidavit that complies with rule 902(10). Tex. R. Evid. 803(6). The predicate witness need not be the creator of the record nor have personal knowledge of the content of the record but rather need only have personal knowledge of the manner in which the records were prepared. *In re E.A.K.*, 192 S.W.3d at 142. Further, third-party documents can become the business records of an organization and consequently admissible under rule 803(6) if the records are (1) incorporated and kept in the course of the testifying witness's business, (2) the business typically relies upon the accuracy of the contents of the documents, and (3) the circumstances otherwise indicate the trustworthiness of the documents. *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240–41 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Bell v. State*, 176 S.W.3d 90, 92 (Tex. App.—

9

Houston [1st Dist.] 2004, pet. ref'd)); *see Ainsworth v. CACH, LLC*, No. 14-11-00502-CV, 2012 WL 1205525, at *5 (Tex. App.—Houston [14th Dist.] Apr. 10, 2012, pet. denied) (mem. op.).

The theory underlying the business-records exception is that there is a certain probability of trustworthiness of records regularly kept by an organization while engaged in its activities and upon which it relies in the ordinary course of its activities. *Sneed v. State*, 955 S.W.2d 451, 453 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (citing *Coulter v. State*, 494 S.W.2d 876, 884 (Tex. Crim. App. 1973)). Therefore, if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness," even a properly authenticated record may be inadmissible. Tex. R. Evid. 803(6). Lack of trustworthiness is most frequently found when the record was prepared in anticipation of litigation. *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993)[4] ("[W]hen a document is created for a particular use that lies outside the business's usual operations—especially when that use involves litigation—neither of [Federal Rule 803(6)'s] justifications for admission holds. . . . [W]e adhere to the well-established rule that documents made in anticipation of litigation are inadmissible under the business records exception."); *Freeman v. Am. Motorists Ins. Co.*, 53 S.W.3d 710, 714–15 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (concluding that when the facts indicate that a letter from the plaintiff's doctor to his attorney was written in

---

[4] Because the Texas Rules of Evidence are patterned after the Federal Rules of Evidence, cases interpreting federal rules should be consulted for guidance as to their scope and applicability unless the Texas rule clearly departs from its federal counterpart. *Cole v. State*, 839 S.W.2d 798, 801 (Tex. Crim. App. 1990). The definition of "business" under the Texas rule was taken from the old Texas statute, rather than from Federal Rule 803(6). *See* JEFF BROWN & REECE RONDON, TEXAS RULES OF EVIDENCE HANDBOOK 870 n.637 (2013 ed.). The legislature preferred the Texas definition because it has been recognized as the broadest, most comprehensive possible description of the category of enterprises whose records are admissible under the exception. *See id.* But that distinction does not affect the applicability of the federal guidance cited here.

response to a request from the attorney, it was likely prepared in anticipation of litigation and was thus not admissible as a business record).

Except in those instances specified by statute or rule, affidavits are not evidence in contested cases. *Stephens v. City of Reno*, 342 S.W.3d 249, 253 (Tex. App.—Texarkana 2011, no pet.) ("[A]bsent authority to the contrary, affidavits are not, as a general rule, admissible in a trial as independent evidence to establish facts material to the issues being tried."); *Roberts v. Mullen*, 446 S.W.2d 86, 90 (Tex. Civ. App.—Dallas 1969, writ ref'd n.r.e.) ("Except in instances specified by statute or rule . . . affidavits are not evidence in contested cases."). Accordingly, when an ex parte affidavit presents evidence beyond the simple authentication requirements of rule 902, the extraneous portions of the affidavit constitute inadmissible hearsay. *United States v. Stone*, 604 F.2d 922, 925 (5th Cir. 1979).

A

In this case, the business-record affidavit has 21 pages of documents attached to it, including the West, Pellicciaro, and Plummer Affidavits. Although the affidavits are notarized and thus self-authenticating, they still may be inadmissible if they are hearsay. Tex. R. Evid. 902(8); *McLeod v. State*, 56 S.W.3d 704, 710 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

1

The West Affidavit is offered as a business record of CACH, but it is clear from the face of the document that it was prepared for the purpose of litigation. The affidavit has the heading of a pleading and refers to CACH and Ortega as "Plaintiff" and "Defendant," respectively. Additionally, CACH filed its original petition on November 22, 2010, and the West Affidavit, dated November 10, 2010, states that CACH made demand for payment upon Ortega more than thirty days

prior to the filing of CACH's original petition but that payment had not been tendered. The fact that West created the affidavit only after CACH's initial collection efforts were unsuccessful shows that it was neither created nor relied upon in the course of CACH's regular debt-collection activities. Therefore, we adhere to the well-established rule and conclude that this document, which was made in anticipation of litigation, was not admissible under the business-records exception. *See Blackburn*, 992 F.2d at 670.

2

CACH also offers the Pellicciaro Affidavit, which is dated February 2, 2009, as a document created by a third party that has become a business record of CACH. Initially, the fact that this affidavit is dated approximately one year and ten months before CACH filed suit suggests that it was prepared in the regular course of Bank of America's business activity rather than in anticipation of litigation. Nevertheless, it was also executed more than six months before August 18, 2009, the date upon which, according to the Plummer Affidavit, CACH acquired Ortega's account from Bank of America. This could mean one of two things: either the date in the Plummer Affidavit is wrong, or the Pellicciaro Affidavit concerns some account other than Ortega's. Whichever is true, the circumstances surrounding the Pelliccario Affidavit do not indicate trustworthiness and the document does not fall within the business-records exception.

3

Finally, the Plummer Affidavit is offered as a third-party document created by Bank of America that has become a business record of CACH. In the business-record affidavit, to which the Plummer Affidavit is attached, West testifies that the documents from MBNA are "maintained by individuals who have a business duty to make entries in the records accurately at or near the time of the event that they

12

record." But the Plummer Affidavit is dated September 9, 2010, and asserts that Bank of America sold Ortega's account to CACH on August 18, 2009. A record of a sale made more than a year after a sale takes place is clearly not "at or near the time of the event" that it purports to record. Further, there is a notation at the bottom of the Plummer Affidavit that reads "CACH, LLC 9.8.10." If those numbers refer to a date, it would be the day before Plummer executed the affidavit, which suggests that she did so at CACH's request. And even assuming those numbers are not significant, the fact that the affidavit is dated about two and a half months before CACH filed suit and over a year after the alleged date of sale suggests that it was created in anticipation of litigation rather than in the course of a regular business activity, which casts doubt on its trustworthiness. *See Freeman*, 53 S.W.3d at 715 (citing the fact that a record was dated "over 10 years after the cause of action accrued and a mere 10 days before the summary[-]judgment hearing" to conclude that it was prepared in anticipation of litigation and thus inadmissible as a business record under rule 803(6)).

The rationale behind the business-records exception is twofold: First, businesses depend on such records to conduct their own affairs, so employees who generate them have a strong motive to be accurate and none to be deceitful; second, routine and habitual patterns of creation lend reliability to business records. *Blackburn*, 992 F.2d at 670. But the circumstances surrounding the Plummer Affidavit do not reflect the conditions of either of those justifications. After reviewing the entire record, we conclude that it does not fall within the business-records exception.[5]

---

[5] It appears that the point of the Plummer Affidavit is to tell the story of CACH's acquisition of Ortega's account from Bank of America. Had this affidavit been attached to a motion for summary judgment, it might have been admissible under Rule 166a. Or had the information the affidavit conveys been offered at trial by a live witness or through a deposition,

13

We therefore conclude that there is no legitimate basis upon which the trial court's overruling of Ortega's hearsay objection can be supported. *See Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43. Having made that determination, we must decide whether the trial court's error resulted in an improper judgment.

Without the challenged paragraphs, there would be insufficient evidence to prove the assignment of the account to CACH, and thus insufficient evidence upon which the trial court could have reasonably rendered a judgment in CACH's favor. Therefore, we conclude that the judgment turned on the improperly admitted evidence and must be reversed.

## B

Issues similar to those upon which we decide this case have arisen in two other credit-card cases we decided earlier this year. In both of those cases, the creditor prevailed. But both are readily distinguishable from this case.

## 1

CACH itself came before this court earlier this year as the appellee in a case with a similar set of facts. *See Ainsworth*, 2012 WL 1205525. In *Ainsworth*, CACH allegedly purchased the appellant–debtor's account from Chase Bank. *Id.* at *2. CACH introduced into evidence a business-record affidavit, which authenticated a number of attachments, including a bill of sale showing that CACH purchased the account from Chase, and a notarized document executed by a Chase employee

---

and thus subjected to cross-examination, it also likely would have been admissible. But, as we have noted above, "affidavits are not, as a general rule, admissible in a trial as independent evidence to establish facts material to the issues being tried." *Stephens*, 342 S.W.3d at 253. And, as we have described, CACH's attempt to avert the general rule via the business-records exception falls short.

titled "Affidavit of Sale." *Id.* at *1–2. In this affidavit, the Chase employee stated that the appellant's account was sold and assigned to CACH with an account balance of $4,567.07. *Id.* at *2. The appellant objected to the affidavit at trial based on hearsay, but his objection was overruled. *Id.* at *4.

On appeal, this court concluded that the circumstances indicated the trustworthiness of the document based on the fact that Chase's failure to keep accurate records could result in criminal or civil penalties and that the amount of the debt in the affidavit matched the amount recorded in the bill of sale. *Id.* at *5. The court thus found that the affidavit fell within the business-records exception. *Id.* But the facts of the present case are clearly distinguishable. First, CACH did not introduce a bill of sale to substantiate the affiants' statements regarding the sale. Second, the *Ainsworth* court did not indicate that the date of the contested affidavit was relevant to its analysis. As described above, however, the dates of the affidavits in this case are highly relevant and indicate that the affidavits are not trustworthy. Therefore, because of these factual distinctions, our holding in this case is not inconsistent with our holding in *Ainsworth*.

2

This court also considered similar issues in *Kaldis v. U.S. Bank Nat'l Ass'n*, No. 14-11-00607-CV, 2012 WL 3229135 (Tex. App.—Houston [14th Dist.] Aug. 9, 2012, pet. filed) (mem. op.). In that case, we ruled in favor of the appellee–creditor, but again, the facts are distinguishable from those in the present case. In *Kaldis*, the appellant objected to portions of the business-record affidavit based on hearsay because, he argued, the contested statements exceeded the scope of a business-record affidavit. *Id.* at *3. Among the business records that the affidavit purported to authenticate were copies of notice-to-vacate letters as well as documents indicating that the post office returned the certified-mail letters to the

15

appellee "unclaimed." *Id.* at *1. In the business-record affidavit, the affiant stated that the notice letters were sent on specific dates by certified mail, return receipt requested, as well as by first-class mail, and that the letters sent by certified mail were returned unclaimed while the first-class letters were not returned. *Id.* The appellant contested the portions of the business-record affidavit regarding the dates and ways in which the notice letters were mailed. *Id.* at *3.

Based on the fact that the affiant specified that she had personal knowledge of the facts set out in her affidavit and that she had actual or constructive care, custody, and control of the attached records, we concluded that the trial court did not abuse its discretion by admitting the affidavit in its entirety. *Id.* But in this case, the challenged affidavits are not business-record affidavits. They are offered as business records themselves. And even if we analyze them as business-record affidavits, the challenged portions clearly exceed the scope of such affidavits. Unlike *Kaldis*, in which the affiant testified as to details directly related to the business records, the challenged portions of the West, Pellicciaro, and Plummer Affidavits refer to the sale of Ortega's account from Bank of America to CACH, a fact which is completely absent from the remaining unchallenged business records. Without that nexus, the statements are inadmissible because they constitute independent evidence being used to establish CACH's ownership of the account, which is a fact material to the issues being tried. *See Stephens*, 342 S.W.3d at 253. Therefore, our holding in this case is not inconsistent with our holding in *Kaldis*.

Because the trial court erroneously admitted hearsay evidence, and because that evidence was essential to the judgment, Ortega's first issue is sustained.

\* \* \*

Because we conclude that the trial court erred by admitting improper evidence and that the judgment turned on the improperly admitted evidence, we

reverse the trial court's judgment and remand the cause for a new trial.

/s/ Jeffrey V. Brown
Justice

Panel consists of Justices Frost, Brown, and Christopher. (Frost, J., Dissenting)