**Reversed and Remanded and Memorandum Opinion filed August 26, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00750-CV

---

### FRANKLIN D. JENKINS, Appellant

### V.

### CACH, LLC, Appellee

---

**On Appeal from the Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 1022701**

---

## M E M O R A N D U M   O P I N I O N

This appeal arises from a debt collection action in which appellee CACH, LLC, the alleged assignee of appellant Franklin D. Jenkins' credit card debt, sued to recover on the debt. Following a bench trial, the trial court rendered judgment against Jenkins. On appeal, Jenkins complains that the trial court did not take judicial notice of adjudicative facts and challenges the trial court's overruling his hearsay objections to purported business records admitted at trial. Concluding that

the trial court erroneously admitted hearsay evidence and that this error probably resulted in an improper judgment, we reverse and remand.

## *Background*

CACH sued Jenkins for breach of contract based upon his failure to repay a debt under an agreement for consumer credit. According to the pleadings, FIA Card Services, N.A., a subsidiary of Bank of America, issued a credit card in Jenkins' name, and Jenkins used or authorized use of the card, thereby incurring charges that he failed to pay. The credit card was cancelled when Jenkins defaulted in making payments on the account. CACH alleges that it purchased the account with an outstanding balance of $10,121.88.

At trial, Jenkins stated his name and acknowledged his address. When asked whether he had received a credit card from Bank of America, he responded, "I have had many credit cards. I do not recall having a credit card from Bank of America." However, when presented with a Bank of America account statement, he admitted that it bore his name and address, although he still maintained that he did not recall receiving the credit card from or making payments to Bank of America.

CACH moved to admit into evidence a business-record affidavit signed by Tom Vigil of CACH. Vigil attested that he is an authorized agent for and a custodian of records of CACH and stated the following in pertinent part:

> (1) I . . . am familiar with [CACH's] business processes. Business records are kept and maintained in the ordinary course of [CACH's] business ("Records") concerning accounts like the account of [Jenkins]. The Records are made and maintained by individuals who have a business duty to make entries in the Records accurately at or near the time of the event that they record, or reasonably soon thereafter, by or from information transmitted by someone with personal knowledge of the event or act.

2

(2) [I]t is [CACH's] regular business practice to obtain, integrate, and rely upon documents prepared by the original creditor of the account at issue. In this particular action, [CACH] has obtained and integrated documents received from the original creditor, FIA CARD SERVICES, . . . a wholly owned subsidiary of Bank of America . . . . [CACH] relies upon the accuracy of such documentation in its day to day business activities and such documents are considered Records of [CACH]. The records consist of both hard copy information and electronic information that is generated, stored and maintained by the original creditor in accordance with generally accepted standards in the retail and financial industries by individuals that possess the knowledge and training necessary to ensure the accuracy and reliability of the records. I know from my experience in reviewing such records that [they] are made and maintained by individuals who have a business duty to make entries in the records accurately at or near the time of the event that they record. [CACH] relies upon the accuracy and reliability of said records in its day to day business.

(3) All credits and payments have been properly applied, [Jenkins] is not entitled to additional credits or offsets on the account of any kind, and the balance as set forth herein is currently due and owing.

(4) I have reviewed [CACH's] file for the account at issue, including [CACH's] history for the account and Records for the account. Based on my familiarity with [CACH's] procedures regarding obtaining and integrating account documents and review of [CACH's] file and Records, I have personal knowledge of the account and the matters stated above are true.

Thirty pages of records were attached to the affidavit, including the following:

(1) a document entitled "Affidavit of Sale and Certification of Debt" signed by Justin S. Taro of FIA Card Services;

(2) a document from Bank of America entitled "Exhibit C–Bill of Sale and Assignment of Loans" signed by Deborah L. Pellicciaro of FIA Card Services;

(3) billing statements from Bank of America sent to Jenkins at his

3

address reflecting payments and unpaid balances;

(4) a "Federally Required Affiliate Marketing Notice" from Bank of America that is not addressed to a specific recipient;

(5) a "Bank of America Privacy Policy" that is not addressed to a specific recipient; and

(6) a "Credit Card Agreement" with "FIA Card Services . . . also known as Bank of America" that is not signed by Jenkins.

In the Affidavit of Sale and Certification of Debt, Taro attested that he is employed as a bank officer by FIA Card Services and, in relevant part, stated:

(1) He "has personal knowledge of the manner and method by which FIA Card Services . . . . maintains its normal business books and records."

(2) The contents of the affidavit are "believed to be true and correct based on the computerized and hard copy books and records of FIA Card Services . . . maintained in the ordinary course of business, with the entries in them having been made at or near the time of the transaction recorded."

(3) The account records of FIA Card Services show Jenkins opened the subject account; Jenkins had a balance of $10,121.88 as of October 31, 2011; the account was transferred to CACH on November 9, 2011 with the same balance; and "[t]here were no uncredited . . . payments, just counterclaims or offsets against [the] debt when sold."

The Bill of Sale and Assignment of Loans signed by Pellicciaro includes the following statement:

[FIA Card Services] hereby . . . sells, transfers, assigns, sets-over, quitclaims, and conveys to CACH . . . without recourse and without representations or warranties of any type, kind, character, or nature, express or implied, . . . all of [FIA Card Services'] right, title, and interest in and to each of the loans identified in the loan schedule . . . attached hereto . . . together with the right to all principal, interest or other proceeds of any kind with respect to the [l]oans remaining due

4

and owing . . . .

Following the Bill of Sale and Assignment of Loans is a heavily redacted document in different typeface that lists the disputed account, along with Jenkins' name, address, and the outstanding balance. There is no indication on this document that it was meant to be the loan schedule referenced in the Bill of Sale and Assignment of Loans.

Jenkins objected to the admission of the entire exhibit, arguing, in relevant part:

(1) "[T]he proffer of evidence does not meet the Business Records Exception Rule to hearsay."

(2) Virgil relies on "the affidavit from Taro . . . stat[ing] that the date the alleged account was sold was November 9th, 2011 . . . . [T]he bill of sale was [also] attached . . . which states that . . . the account was sold on November 15th, 2011. Now, obviously, . . . both documents do not state the same thing. So there is a lack of reliability and lack of trustworthiness."

(3) The Taro affidavit was made "nearly a year after the alleged account was sold" and is dated one day before the affidavit was signed, which shows a lack of trustworthiness.

(4) The Bill of Sale and Assignment of Loans "does not specifically [reference] this alleged account. It's just a blank bill of sale."

(5) "[T]he date on the bill of sale[, November 15, 2011] cannot relate to this alleged account because . . . [t]he Taro affidavit states that . . . it was . . . sold, transferred and set over to CACH [on November 9, 2011.]"

The trial court overruled Jenkins' objections and admitted the exhibit in its entirety. The trial court ruled in favor of CACH and rendered final judgment ordering that CACH recover from Jenkins actual damages as well as attorney's fees, post-judgment interest, and court costs.

*Discussion*

In two issues, Jenkins argues the trial court erred in refusing to take judicial notice of adjudicative facts and abused its discretion in overruling his objections to CACH's exhibit. When an appellant asserts multiple grounds for reversal of the trial court's judgment, we first should address any issues that would require rendition and then, if necessary, consider issues that would result in remand. *See* Tex. R. App. P. 43.3; *Ortega v. CACH, LLC*, 396 S.W.3d 622, 627 (Tex. App.— Houston [14th Dist.] 2013, no pet.).

## I. No Preservation of Error as to Complaint Regarding Trial Court's Failure to Take Judicial Notice

It is unclear from the record whether sustaining Jenkins' second issue—that the trial court erred in refusing to take judicial notice of adjudicative facts—would result in rendition of judgment in Jenkins' favor, because, as discussed below, Jenkins does not explain how the trial court's judicial notice of such facts would have changed the outcome of the trial. Nonetheless, we shall address that issue first. Jenkins argues that at trial, he asked the trial court to take judicial notice of adjudicative facts that Jenkins previously had submitted to the court via a trial memorandum.[1]

Jenkins does not explain on appeal what the relevant adjudicative facts were or how the trial court's failure to take judicial notice of them resulted in error. Thus, he has waived that complaint. *See* Tex. R. App. P. 38.1(i) (providing appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and the record); *see also Gurka v. Gurka*, 402 S.W.3d 341, 349-50 (Tex. App.—Houston [14th Dist.] 2013, no pet.)

---

[1] The trial memorandum included, among other things, a loan sale agreement between FIA Card Services and CACH.

(recognizing that failure to cite authority or advance substantive analysis waives appellate issue).

Moreover, at trial, Jenkins asked the trial court, "I would just request that under Rule 201 that he be allowed to look at a sample copy of a mutual non-disclosure agreement between CACH and FIA Card Services to understand why the documents they submit are untrustworthy."[2]  Texas Rule of Evidence 201 requires a trial court to take judicial notice of adjudicative facts when requested by a party who supplies the necessary information.  Tex. R. Evid. 201(d).  An adjudicative fact is one not subject to reasonable dispute in that it is either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Tex. R. Evid. 201(b).  Jenkins not only failed to demonstrate that the non-disclosure agreement constituted an adjudicative fact, he also failed to obtain a ruling on his request.  Accordingly, he failed to preserve error on this issue.[3]  *See* Tex. R. App. P. 33.1(a)(2); *Lopez v. City Towing Assocs., Inc.*, 754 S.W.2d 254, 263 (Tex. App.—San Antonio 1988, writ denied).

We overrule Jenkins' second issue.

## II.    Abuse of Discretion in Overruling Hearsay Objections

In his first issue, Jenkins argues that CACH's exhibit failed to meet the business records exception to hearsay because it was not trustworthy for the following reasons, among others: (1) the Vigil affidavit contains hearsay because it includes out of court statements to prove the truth of the matter asserted concerning ownership of the subject account; (2) the Taro affidavit, which states that the

---

[2] The loan sale agreement included the mutual non-disclosure agreement as an exhibit.  It is unclear who the "he" is in Jenkins' request.

[3] We note that Jenkins did not introduce the agreement as an exhibit at trial.

account was sold on November 9, 2011, conflicts with the Bill of Sale and Assignment of Loans, which states that the account was sold on November 15, 2011; (3) the Taro affidavit was made nearly a year after the account was sold, indicating that it was not created in the regular course of business; and (4) the Bill of Sale and Assignment of Loans does not reference the subject account. CACH argues that the exhibit was admissible in its entirety under the business records hearsay exception.

Evidentiary rulings are committed to the trial court's sound discretion. *Ortega*, 396 S.W.3d at 628. A trial court abuses its discretion only when it rules without regard for any guiding rules or principles, and we must uphold a trial court's evidentiary ruling if there is any legitimate basis to support it. *Id.* Even if a court erroneously admitted improper evidence, to warrant reversal, the complaining party must show that the error probably resulted in an improper judgment, which typically requires a showing that the judgment turned on the particular evidence in question. *Id.* at 629 (citing Tex. R. App. P. 44.1). In making this determination, we review the entire record. *Id.*

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is inadmissible unless a statute or rule of exception applies. Tex. R. Evid. 801(d); 802. The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule. *Ortega*, 396 S.W.3d at 629. Under the business-records exception, evidence that is otherwise inadmissible as hearsay may be admissible if the proponent of the evidence demonstrates that (1) the records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to create such records; (3) the records were created at or near the time of the event recorded; and (4) the records were created by, or from information transmitted by,

8

a person with knowledge who was acting in the regular course of business. Tex. R. Evid. 803(6); *Ortega*, 396 S.W.3d at 629.

These prerequisites to admissibility may be provided in the form of an affidavit that complies with Rule 902(10). Tex. R. Evid. 803(6), 902(10) (including sample business records affidavit); *Ortega*, 396 S.W.3d at 629. The predicate witness need not be the creator of the record or have personal knowledge of the content of the record but rather need only have personal knowledge of the manner in which the records were prepared. *Ortega*, 396 S.W.3d at 629. Further, third-party documents can become the business records of an organization and consequently admissible under Rule 803(6) if the records are (1) incorporated and kept in the course of the testifying witness's business, (2) the business typically relies upon the accuracy of the contents of the documents, and (3) the circumstances otherwise indicate the trustworthiness of the documents. *Id*.

The theory underlying the business-records exception is that there is a certain probability of trustworthiness of records regularly kept by an organization while engaged in its activities and upon which it relies in the ordinary course of its activities. *Id*. Therefore, if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness," even a properly authenticated record may be inadmissible. Tex. R. Evid. 803(6); *Ortega*, 396 S.W.3d at 630. Lack of trustworthiness is most frequently found when the record was prepared in anticipation of litigation. *Ortega*, 396 S.W.3d at 630.

Except in those instances specified by statute or rule, affidavits are not evidence in contested cases. *Id*. Accordingly, when an ex parte affidavit presents evidence beyond the simple authentication requirements of Rule 902, the extraneous portions of the affidavit constitute inadmissible hearsay. *Id*.

**Vigil Affidavit**. This affidavit contains the prerequisite authentication

9

requirements of Rule 902. However, it also contains two paragraphs that are extraneous. Vigil attested:

> All credits and payments have been properly applied, [Jenkins] is not entitled to additional credits or offsets on the account of any kind, and the balance as set forth herein is currently due and owing. . . .

> I have reviewed [CACH's] file for the account at issue, including [CACH's] history for the account and Records for the account. Based on my familiarity with [CACH's] procedures regarding obtaining and integrating account documents and review of [CACH's] file and Records, I have personal knowledge of the account and the matters stated above are true.

In analyzing the contents of the attached business records and reaching conclusions based on that analysis, these statements contain information in addition to that required to authenticate business records under Rule 902 and thus constitute inadmissible hearsay. *See id.*

**Taro Affidavit**. This affidavit was offered by CACH as a third-party document created by FIA Card Services that has become a business record of CACH. In the business-record affidavit, to which the Taro affidavit is attached, Vigil testifies that the documents from FIA Card Services are "maintained by individuals who have a business duty to make entries in the records accurately at or near the time of the event that they record." But the Taro affidavit is dated August 7, 2012, and asserts that FIA Card Services sold Jenkins' account to CACH on November 9, 2011. A record of a sale made nearly a year after a sale takes place is not "at or near the time of the event" that it purports to record. *See id.* at 631. Further, there is a notation at the bottom of the Taro affidavit that reads "CACH, LLC 8/6/2012." If those numbers refer to a date, it would be the day before Taro executed the affidavit, which suggests that he did so at CACH's request and not in the regular course of business. *See id.* Even assuming those

10

numbers are not significant, the fact that the affidavit is dated three months before CACH filed suit and nearly a year after the alleged date of sale suggests that it was created in anticipation of litigation rather than in the course of a regular business activity, which casts doubt on its trustworthiness. *See id.*

**Bill of Sale and Assignment of Loans**. This document, also offered by CACH as a business record created by a third party, purports to transfer FIA Card Services' "right, title and interest in and to each of the loans identified in the loan schedule . . . attached hereto." As set forth above, immediately following the Bill of Sale and Assignment of Loans is a heavily redacted document in different typeface that lists the disputed account, along with Jenkins' name, address, and the outstanding balance. However, there is no indication on the redacted document that it was meant to be the loan schedule referenced in the Bill of Sale and Assignment of Loans. Moreover, the date of the assignment referenced in the Bill of Sale and Assignment of Loans—November 15, 2011—conflicts with the date of assignment of the account attested to by Taro—November 9, 2011. Accordingly, the circumstances surrounding the Bill of Sale and Assignment of Loans and the redacted document do not indicate trustworthiness and the document does not fall within the business-records exception. *See id.*

CACH argues this case is akin to *Ainsworth v. CACH, LLC*, No. 14-11-00502-CV, 2012 WL 1205525 (Tex. App.—Houston [14th Dist.] Apr. 10, 2012, pet. denied) (mem. op.). In that case, CACH allegedly purchased the appellant-debtor's account from Chase Bank. *Id*. at *1. CACH introduced a business-record affidavit, which authenticated a number of documents, including a bill of sale showing that CACH purchased the account from Chase, with an affidavit from a Chase employee stating that appellant's account was sold and assigned to CACH with the amount of the balance due. *Id*. at *1-2. We concluded that the affidavit

11

fell within the business-records exception. *Id*. at *5. The facts of this case are distinguishable.

First, even though CACH introduced a bill of sale, it does not reference Jenkins' account. Although the heavily-redacted document following the bill of sale includes the subject account, there is no evidence that the document was attached to the bill of sale, other than by its proximity to the bill of sale in the exhibit. It is not labeled as the loan schedule referenced in the bill of sale, and there is no indicator of what the document purports to be, other than a list detailing the subject account and balance.

Second, in *Ainsworth*, we did not hold that the date of the contested affidavit was relevant. *See Ortega*, 396 S.W.3d at 632. As described above, the date of the Taro affidavit, which is the only document directly referencing the assignment of Jenkins' account to CACH, is highly relevant and indicates it is not trustworthy. *See id*. This case thus is more akin to *Ortega* than *Ainsworth*. *Compare Ainsworth*, 2012 WL 1205525, at *5, *with Ortega*, 396 S.W.3d at 632.

We conclude there is no legitimate basis upon which the trial court's overruling of Jenkins' hearsay objections can be supported. *See Ortega*, 396 S.W.3d at 632. Having made that determination, we must determine whether the trial court's error resulted in an improper judgment. *See id*. Without the inadmissible evidence discussed above, there would be insufficient evidence to prove the assignment of the account to CACH and thus insufficient evidence upon which the trial court could have reasonably rendered a judgment in CACH's favor. *See id*. Therefore, we conclude the judgment turned on the improperly admitted evidence and must be reversed. *See id*. Because the trial court erroneously admitted hearsay evidence that was essential to the judgment, we sustain Jenkins' first issue.

12

Because we conclude that the trial court erred by admitting improper evidence upon which the judgment turned, we reverse the trial court's judgment and remand the cause for a new trial. *See id.* at 633.


/s/     Martha Hill Jamison
        Justice

Panel consists of Justices Christopher, Jamison, and McCally.