**Reverse and Render; Opinion Filed May 14, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00626-CV

### GOLDEN PEANUT COMPANY, LLC D/B/A GOLDEN PEANUT AND TREE NUTS, Appellant
### V.
### GIVE AND GO PREPARED FOODS CORP., Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-13535**

## MEMORANDUM OPINION

Before Justices Bridges, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

This case reads like a law school exam: a Canadian confectioner sued a Georgia-based[1] nut supplier and a Texas-based nut supplier in Dallas County. Texas pecans are at the center of the controversy unless they aren't. Weevils found their way into some pecans somewhere, which was a problem.

Appellee, Canadian corporation Give and Go, sued appellant, Georgia LLC Golden Peanut, in Dallas County claiming that Golden Peanut delivered, from its Georgia plant to Give and Go's Canadian plant, weevil-infested pecan pieces, some or all of which may have come from Texas.[2]

---

[1] (the Peach State, not the country in the Caucasus)

[2] Give and Go also sued San Saba Pecan, a Texas limited partnership, on a similar claim, but they are understandably not a party to this special appearance appeal. San Saba has asked the trial court to move the case to its home in San Saba County.

The trial court denied Golden Peanut's special appearance but didn't provide its reasoning. *See* TEX. R. CIV. P. 296. We reverse and render judgment, dismissing Give and Go's claims against Golden Peanut because Texas courts lack jurisdiction over Golden Peanut in this particular case. Because all issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. Background

Give and Go alleged (1) beginning in late 2016, Golden Peanut "supplied Plaintiff with small pecan pieces containing whole and partial pecan weevil larvae visible to the human eye"; (2) Give and Go "had no choice but to engage in a . . . recall of the Pecans," which caused Give and Go to "suffer significant property damage and associated economic damages"; and (3) the trial court "has personal jurisdiction over the Defendants because Defendants do business in Dallas County, Texas."

Golden Peanut filed a special appearance, contending (1) it "is not a Texas resident"; (2) "general personal jurisdiction is lacking as Golden Peanut is not 'at home' in Texas because it is a Georgia limited liability company with its principal place of business in Georgia"; and (3) specific personal jurisdiction is lacking because "Plaintiff's lawsuit does not arise from any Golden Peanut conduct in Texas" and "there is no nexus between Plaintiff's allegations against Golden Peanut and Golden Peanut's connections to Texas." In an affidavit attached to the special appearance, Kevin J. Kramer, Golden Peanut's Vice President of Tree Nuts, stated, "All of the pecans associated with [Give and Go's] Orders were shipped from Golden Peanut's shelling plant in Camilla, Georgia to Give and Go in Canada." The record indicates that once pecans arrive at the Camilla shelling plant, they are mixed together such that tracing shelled pecans' origins becomes near impossible.

In its response to the special appearance, Give and Go contended (1) Golden Peanut is subject to personal jurisdiction in Texas and (2) Golden Peanut submitted to personal jurisdiction

by "compelling merits-based discovery and participating in other non-jurisdictional matters and hearings." Following the special appearance hearing, both parties filed supplemental briefs. Golden Peanut asserted it is not subject to general jurisdiction in Texas because (1) Georgia is its state of incorporation and principal place of business; (2) "[f]or a company with locations in five states and three countries, Golden Peanut's limited Texas facilities are insufficient"; and (3) "Texas employees making up 13% of a company's worldwide workforce is insufficient." Golden Peanut attached and cited another Kramer affidavit, which included an exhibit describing Golden Peanut's "global footprint" as consisting of its corporate headquarters and regional office in Georgia; eight "peanut facilities," one of which is a shelling and storage facility in Texas; four "pecan facilities," one of which is a shelling and packaging facility in Texas; and two "tree nut facilities" in California.

Give and Go's supplemental brief stated (1) "Golden Peanut concedes that potentially ***all*** of Golden Peanut's pecans at issue in this case could have come from its Texas pecans suppliers" and (2) "Give and Go has satisfied the 'substantial connection' requirement because its claims arise from pecans contaminated with weevils that Golden Peanut sourced from Texas and sold to Give and Go."

## II. The special appearance

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790–91 (Tex. 2005). If, as in this case, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we imply all findings of fact necessary to support its ruling that are supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When jurisdictional

facts are undisputed, whether those facts establish jurisdiction is a question of law. *Old Republic*, 549 S.W.3d at 558.

Texas courts may exercise personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute permits exercising jurisdiction and (2) asserting jurisdiction satisfies constitutional due process guarantees. *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016); *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010); *see also* TEX. CIV. PRAC. & REM. CODE §§ 17.041–.045 ("Long-Arm Jurisdiction in Suit on Business Transaction or Tort"). The Texas long-arm statute reaches "as far as the federal constitutional requirements for due process will allow." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Personal jurisdiction over a nonresident defendant satisfies constitutional due process guarantees when (1) the nonresident defendant has established minimum contacts with the forum state and (2) exercising jurisdiction comports with traditional notions of fair play and substantial justice. *See M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

Minimum contacts are established when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking its laws' benefits and protections. *Kelly*, 301 S.W.3d at 657–58. There are three parts to the purposeful-availment inquiry: (1) only the defendant's contacts are relevant; (2) the contact must be purposeful, not random, fortuitous, or attenuated; and (3) the defendant must seek some advantage, benefit, or profit by availing itself of the forum. *Moki Mac*, 221 S.W.3d at 575.

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction. *Id.* Specific jurisdiction, also called case-linked jurisdiction, is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum state.

*Id.* at 576. A claim arises from or relates to the forum contacts if there is a "substantial connection between [the] contacts and the operative facts of the litigation." *Id.* at 585. The specific jurisdiction analysis focuses on the relationship among the defendant, the forum, and the litigation. *Id.* at 575–76. Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis unless all claims arise from the same forum contacts. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51 (Tex. 2013).

A court has general jurisdiction, also called all-purpose jurisdiction, over a nonresident defendant whose "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S 117, 139 (2014)). The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). But "[t]he exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). The test for general jurisdiction presents "a more demanding minimum contacts analysis than for specific jurisdiction." *TV Azteca*, 490 S.W.3d at 37. When a court has general jurisdiction over a nonresident, it may exercise jurisdiction even if the cause of action did not arise from activities performed in the forum state. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *see also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952).

### A. Special appearance waiver

Give and Go argues Golden Peanut waived its special appearance by (1) moving to compel discovery regarding a Texas choice of law and venue provision and (2) objecting to Give and Go's motion for a merits-based discovery plan and protective order, despite Golden Peanut doing so

"subject to" the special appearance and consistently refusing to take a position on the order so as to not jeopardize its special appearance.

A defendant may make a special appearance to object to the trial court's personal jurisdiction over him. *See* TEX. R. CIV. P. 120a(1). Every appearance prior to judgment not in compliance with rule 120a is a general appearance. *Id*. "[A] trial court's resolution of discovery matters related to the special appearance does not amount to a general appearance by the party contesting personal jurisdiction." *Exito Elec. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 307 (Tex. 2004) (per curiam).

Golden Peanut's motion to compel discovery addressed Give and Go's claim that contractual provisions required Texas law to govern and for Texas to be the venue for the suit. Though it turned out the page containing these provisions was incorrectly associated with the contract and that the correct page listed Illinois as the chosen law and forum, Give and Go had not properly withdrawn its reliance on the Texas contract as basis for jurisdiction, even by the time it filed a March 5, 2018 amended motion to compel discovery. Golden Peanut's March 7, 2018 motion to compel discovery regarding the contract with Texas choice of law and venue provisions thus addressed only jurisdictional discovery, which did not waive its special appearance.[3]

Regarding Give and Go's request for a discovery control plan and protective order, Golden Peanut's objection (1) expressly stated it was filed subject to Golden Peanut's special appearance and (2) pertained solely to preserving that special appearance. Therefore, Golden Peanut's objection did not waive its personal jurisdiction challenge. *See* TEX. R. CIV. P. 120a(1); *see also Dawson-Austin v. Austin*, 968 S.W.2d 319, 322–23 (Tex. 1998) (no special-appearance waiver occurred where defendant who filed special appearance along with other motions sought

---

[3] Give and Go's claim that Golden Peanut had objected to discovery regarding the Texas-focused contract as merits-based is not entirely correct. The portions of discovery Give and Go cites requested Golden Peanut to go beyond merely producing the contract or admitting its existence, venturing beyond jurisdictional discovery and into the merits.

continuance after plaintiff set non-jurisdictional motions for hearing, because motion for continuance did not request affirmative relief inconsistent with defendant's assertion that trial court lacked jurisdiction).

## B. Specific or case-linked jurisdiction

In its first issue, Golden Peanut contends the trial court erred if specific jurisdiction was the basis for denying its special appearance.

After a plaintiff satisfies its initial burden to plead allegations that satisfy the Texas long-arm statute, the defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Kelly*, 301 S.W.3d at 659; *see also Searcy v. Parex Res. Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly*, 301 S.W.3d at 658. While rule 120a requires the trial court to determine the special appearance based on the pleadings and certain specified evidence, "this additional evidence merely supports or undermines the allegations in the pleadings." *Id.* at 658 n.4; *see also Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied) (court considers plaintiff's allegations in both its pleadings and its special appearance response).

On appeal, Give and Go has asserted (1) "Golden Peanut cannot deny that it reached into Texas to source pecans and that some or all of those (weevil-contaminated) pecans that it sold to Plaintiff very well could have come from Texas"; (2) "[t]he pecan weevil larvae infestation that caused Plaintiff to recall its products is centered on pecans sourced from Texas, that were sold in Texas, which affected Texas customers, and which led to a nationwide U.S. recall presided by the Dallas, Texas, office of the FDA"; (3) "[b]ecause Golden Peanut reached into Texas to source the contaminated pecans that it sold to Plaintiff, there is a substantial connection between Golden Peanut's contact with Texas and this litigation"; and (4) the trial court has specific personal jurisdiction "[b]ecause Golden Peanut cannot negate the possibility that some or all of the pecans at issue in this litigation originated from Texas, and because Golden Peanut caused Plaintiff to suffer harm in Texas."

In its petition, Give and Go made no allegation that the Golden Peanut pecans came from Texas.[4] But combined with its jurisdictional pleadings, Give and Go adequately albeit barely supported its allegation that Golden Peanut supplied it Texas pecans, if only in part. This shifted the burden to Golden Peanut to negate all bases of personal jurisdiction. *See Searcy*, 496 S.W.3d at 66; *accord Kelly*, 301 S.W.3d at 658. Golden Peanut then contended that Give and Go's allegations could not establish personal jurisdiction as a matter of law because they did not sufficiently allege a substantial connection between Golden Peanut, these claims, and Texas. *See Kelly*, 301 S.W.3d at 658; *Walden*, 571 U.S. at 283–84. The relevant jurisdictional facts here are undisputed, so "we need not consider any implied findings of fact." *Old Republic*, 549 S.W.3d at 558. We consider only the legal question whether the undisputed facts establish jurisdiction. *Id.* Give and Go tells us on appeal that "Golden Peanut acquired Texas pecans, which were infested

---

[4] It appears Give and Go believed Golden Peanut had contractually agreed to Texas as the forum at this time in the litigation.

–8–

with pecan weevils, from Texas growers" and "sold the pecan-weevil-infested Texas pecans to Give and Go." As we note, Give and Go never alleged or proved this connection in its jurisdictional pleadings below.

Through the jurisdictional pleadings, the parties agree on the relevant math: Golden Peanut processed a batch of 1.4 million pounds of in-shell pecans in Camilla, Georgia; 34,800 pounds of those pecans came from Texas; Give and Go ordered 20,160 pounds of fancy small pecan pieces. The record does not tell us what average percentage pecan meat is of the total in-shell weight. Assuming half an average in-shell pecan's weight is meat, the 20,160 pounds of pieces came from 40,320 pounds of in-shell pecans, or 2.88 percent of the 1.4 million-pound batch.[5] It is true, as Give and Go suggests, that much of its order *could* have been filled by Texas pecans. But it is also true that non-Texas pecans made up more than 97 percent of the batch from which Golden Peanut provided Give and Go pecans. It is undisputed that Golden Peanut processed the entire batch at a Georgia plant.[6]

The record contains no evidence that Texas generally, or any specific area from which the pecans were sourced in the state, was experiencing a weevil infestation when Golden Peanut sourced pecans for this 1.4 million-pound pecan batch. That said, the record contains no evidence that there was a weevil infestation anywhere else Golden Peanut sourced its pecans. And the record does not contain evidence regarding whether weevils only infect living pecans while on the tree in

---

[5] Even if one-third of an in-shell pecan is made up of meat, Give and Go's order was only for roughly 4 percent of this batch.

[6] Give and Go also ascribes weight to the facts that the products it made using Golden Peanut's pecans ended up in Texas retail establishments and that the Food and Drug Administration based its recall here in Dallas. What Give and Go did with its end products after incorporating Golden Peanut's pecans is not a Golden Peanut contact to Texas. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (focus on defendant's presence in, or contacts with, the forum state); *Moki Mac*, 221 S.W.3d at 575. And though we can imagine a theoretical inference that the FDA administering a weevil-infested pecan recall from Dallas meant this recall focused on Texas pecans in part or in whole, we question whether that would be a reasonable inference given the dearth of other support for the chain of logic leading to that conclusion. In any event, these are non-defendant-focused contact-type facts that do not inform our jurisdictional inquiry. *See Walden*, 571 U.S. at 290; *Michiana*, 168 S.W.3d at 790–91.

their state of origin or whether weevils can infest pecans after harvest such that weevils traveling in pecans from one state could later infest pecans from another state.

The parties agree that neither can pinpoint the pecans' source once they are at Golden Peanut's processing plants, such that the pecans from various locales become fungible when combined for shelling.[7] Give and Go never requested that its order be filled solely with Texas pecans. Give and Go has provided no basis for a conclusion that the pecans were—by biological or other fact—weevil-infested upon leaving Texas on their way to Georgia for shelling at Golden Peanut's plant. To the extent Give and Go contends its allegation that the "injury" of selling weevil-infested confections "occurred in Texas" is, alone, a sufficient basis for specific personal jurisdiction, we disagree. *See above* n.6; *N. Frac Proppants, II, LLC v. 2011 NF Holdings, LLC*, No. 05-16-00319-CV, 2017 WL 3275896, at *9 (Tex. App.—Dallas Jul. 27, 2017, no pet.) (mem. op.) ("the question is 'not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way'" (quoting *Walden*, 571 U.S. at 290)). The confections are the end result of a process: Give and Go requested pecan pieces from Golden Peanut, Golden Peanut shipped them to Give and Go, Give and Go integrated the pecan pieces into confections, and Give and Go distributed these confections into the market, some portion of them finding their way to Texas.

Enough about what the record does not tell us. Stated affirmatively, Give and Go's assertion of specific jurisdiction must hinge on the following Texas connections: Golden Peanut ordered 2.5% of a 1.4 million-pound in-shell pecan batch from Texas and 97.5% of the batch came from other states; Give and Go in Canada ordered from Golden Peanut in Georgia a shelled quantity equal to 2.88% of the entire 1.4 million-pound batch; it is possible that, though Golden

---

[7] We note that defendants who have the unique ability to control access to certain facts, such as processed pecans' origin, may "hide the ball" to defeat jurisdiction. But there is no suggestion in this record that Golden Peanut has done so here or has been anything but as forthcoming as is possible.

Peanut's aggregation process for shelling effectively rendered all states' pecans fungible without prohibitively expensive genetic testing, some or all or none of the pecans shipped to Give and Go could have come from Texas. Thus, the record does not support a conclusion that this suit "aris[es] out of or relat[es] to" Golden Peanut's contacts with Texas. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017); *see also Kelly*, 301 S.W.3d at 660 ("[T]he mere commission of an act does not grant Texas courts jurisdiction over the actor. Rather, as we have frequently emphasized, the requirements of due process must be upheld, particularly the connection between the defendant, the forum, and the litigation in the specific jurisdiction context."); *Old Republic*, 549 S.W.3d at 560 ("we have cautioned that we must not confuse the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits"). On a legal basis, there is an insufficient "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *See Bristol-Myers Squibb*, 137 S. Ct. at 1780. On a factual basis, this record provides insufficient basis to conclude that any more than a de minimis amount of pecan pieces came from Texas, combined with Golden Peanut's lack of jurisdictionally relevant contacts with Texas regarding this incident. *See Kelly*, 301 S.W.3d at 659.

The trial court erred if it concluded Give and Go sufficiently alleged specific jurisdiction.

### *C. General or all-purpose jurisdiction*

In its second issue, Golden Peanut contends Give and Go did not carry its burden to show general personal jurisdiction over Golden Peanut in Texas. We agree.

The United States Supreme Court has explained that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts," but "[r]ather, the inquiry calls for an appraisal of a corporation's activities in their entirety" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF Ry.*, 137 S. Ct. at

1559 (internal citation omitted); *accord Bristol-Myers Squibb*, 137 S. Ct. at 1780; *Daimler*, 571 U.S. at 139 n.20. This Court has stated "general jurisdiction contacts are not established by showing that foreign business entities (i) paid Texas franchise taxes, (ii) were registered to do business in Texas, and (iii) had registered agents for service of process in Texas." *N. Frac Proppants*, 2017 WL 3275896, at *16 (citing *Asshauer v. Glimcher Realty Trust*, 228 S.W.3d 922, 933 (Tex. App.—Dallas 2007, no pet.).

Here, Golden Peanut maintains a registered agent for service of process in Texas and employs shelling and packaging workers in Texas constituting 13% of its total workforce. Golden Peanut's two facilities in Texas comprise a similar percentage—about 13%—of its total facilities. Neither Golden Peanut executives' travel to Texas for trade association shows and conferences nor Golden Peanut's purchases and sales in Texas adds sufficient basis to support general jurisdiction. The non-corporate Texas facilities do not make Golden Peanut "at-home" in Texas, and the executive travel does not change the conclusion. *See BNSF Ry.*, 137 S. Ct. at 1559–60 (in-state business in Montana, including over 2,000 miles of railroad track and over 2,000 Montana employees, did not permit assertion of general jurisdiction over claims unrelated to activity occurring in Montana); *BMC Software*, 83 S.W.3d at 797 (nonresident's purchasing products in Texas to distribute in Europe was not enough to establish general jurisdiction); *Am. Type Culture*, 83 S.W.3d at 809 (nonresident's attendance at five Texas conferences did not support general jurisdiction); *N. Frac Proppants*, 2017 WL 3275896, at *23 (maintaining Texas agent for service of process and "small number of relatively low-level employees, out of a much larger workforce" did not make nonresident corporation "at home" in Texas); *SprayFoamPolymers.com, LLC v. Luciano*, No. 03-16-00382-CV, 2018 WL 1220891, at *4 (Tex. App.—Austin Mar. 8, 2018, pet. denied) (mem. op.) (nonresident company's distribution center, sales representative, and training installers in Texas did not give rise to general jurisdiction).

Appraising Golden Peanut's activities "in their entirety," we conclude this is not an "exceptional case" in which a nonresident corporate defendant's Texas operations "are so substantial and of such a nature to render the corporation at home in that state." *See BNSF Ry.*, 137 S. Ct. at 1558–59 ("[a] corporation that operates in many places can scarcely be deemed at home in all of them"); *see also Daimler*, 571 U.S. at 139 n.20. To the extent the trial court found general jurisdiction over Golden Peanut, it erred.[8]

### III. Conclusion

We decide Golden Peanut's three issues in its favor. We reverse the trial court's order and render judgment dismissing Give and Go's claims against Golden Peanut for lack of jurisdiction.


/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE


180626F.P05

---

[8] In support of its arguments, Give and Go cites *Del Castillo v. PMI Holdings N.A., Inc.*, No. 4:14-CV-3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015) (concluding general jurisdiction over out-of-state corporation was proper based on one office in Houston and registered agent for service of process in Texas), and *Acacia Pipeline Corp. v. Champlin Exploration, Inc.*, 769 S.W.2d 719 (Tex. App.—Houston [1st Dist.] 1989, no writ) (concluding Texas court had general jurisdiction over Delaware corporation that "obtained a certificate of authority to transact business in Texas" and "maintained a registered office and registered agent"). Neither of those cases is binding on this Court, nor are they persuasive.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GOLDEN PEANUT COMPANY, LLC
D/B/A GOLDEN PEANUT AND TREE
NUTS, Appellant

No. 05-18-00626-CV     V.

GIVE AND GO PREPARED FOODS
CORP., Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-13535.
Opinion delivered by Justice Carlyle.
Justices Bridges and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, we **REVERSE** the judgment of the trial court and **RENDER** judgment dismissing appellee GIVE AND GO PREPARED FOODS CORP.'s claims against appellant GOLDEN PEANUT COMPANY, LLC D/B/A GOLDEN PEANUT AND TREE NUTS for lack of jurisdiction.

It is **ORDERED** that appellant GOLDEN PEANUT COMPANY, LLC D/B/A GOLDEN PEANUT AND TREE NUTS recover its costs of this appeal from appellee GIVE AND GO PREPARED FOODS CORP.

Judgment entered this 14th day of May, 2019.